Strafford,
No. 4631.

JAMES T. LAMPESIS *v.* JOSEPH F. COMOLLI.

Argued March 5, 1958.

Decided April 24, 1958.

280

*Fisher, Parsons & Moran* (*Mr. Moran* orally), for the plaintiff.

*Orr & Reno* (*Mr. Reno* orally), for the defendant.

BLANDIN, J. The defendant first argues that the evidence was insufficient to support the action of deceit and therefore, this being the only count submitted to the jury, judgment should be entered in his favor. To determine the validity of this claim it is necessary to examine the facts in some detail. Taking the evidence most favorable to the plaintiff, as the law requires us to do (*Chase* v. *Company*, 95 N. H. 483), it appears the jury could find, among others, the following facts.

The defendant, Joseph F. Comolli, was the president and treasurer of New Hampshire Explosives Machinery Company, and also the owner of practically its entire stock. As the New Hampshire representative for the Unit Crane and Shovel Corporation, he approached the plaintiff in the spring of 1950 and on May 3 of that year sold him a Unit shovel and crane powered by a diesel engine for $10,793. At that time the plaintiff was without funds to make an initial deposit of $200. The defendant loaned the plaintiff this amount and a short time thereafter, upon the arrival of the shovel, he loaned him an additional $2,000 to finance the deal, taking as security an assignment from the Kidder Press of $1,000 which it owed the plaintiff and a $1,200 note signed by Doctor Lampesis, the plaintiff's brother.

Thereafter, while the shovel remained in the plaintiff's possession and until it was repossessed on August 1, 1951, he was in pretty constant financial difficulties and was generally behind in his monthly installment payments of $443.97. The Unit Corporation found it necessary to send a special representative to him in the fall of 1950 in an endeavor to collect back payments. All these facts were known to the defendant who, at the Unit Corporation's request and as their New Hampshire representative, himself made numerous calls to Lampesis in an endeavor to get payments from him and even sent one of his employees to dun the plaintiff.

In the late winter of 1951, Lampesis' financial predicament became acute, until, as a result of negotiations commenced in February, he received on March 16, 1951, an offer from the city of Dover to purchase his shovel for $10,000, provided it were free of encumbrances and minor repairs were made. This offer was to expire in twenty days or on April 5. There were no encumbrances on it at that time, but in order to procure the materials to make the required repairs, Lampesis called on the defendant Comolli at his place of business in Concord around the latter part of March. At that time the plaintiff told the defendant that he was hard-pressed and "couldn't keep the payments going" so he was about to sell his shovel to the city of Dover. Thereupon, the defendant, who had in his sales talk told the plaintiff that he would be able to keep up his payments all right by earnings from the shovel, urged Lampesis not to sell, saying that he, Comolli, would get Lampesis $11,500 for the shovel, and for him to "hang on to it." The defendant also assured the plaintiff that he need not worry about his financial difficulties with the Unit Corporation because

their attorney, Mr. Reno, was "part of" Comolli's corporation and he, Comolli, could "take care of that end of it." The defendant also told Lampesis that he could get $1,500 clear for him after payment of all his obligations including his $1,200 note to Comolli.

Prior to this conference between the two, it appeared that the city of Dover had on February 2, 1951, requested sealed bids on a shovel, to be received on or before February 19, and that the defendant had submitted on that date the low bid of $12,199. However, on March 1, the city had informed the defendant that all bids were being rejected. At their conference in late March, Comolli also urged Lampesis not to sell to Dover because he, Comolli, was low bidder on the proposed purchase of a new shovel by the city and would make a sale if the plaintiff did not. Comolli did not tell Lampesis that if he sold his new shovel to Dover, as he did on April 16, 1951, almost immediately after the proposed sale by the plaintiff to the city fell through, he would make a $1,500 commission as the record shows that he did.

The defendant never sold the plaintiff's shovel while it remained in the latter's possession. Although the defendant claimed that he persisted in his attempts to do so until the shovel was repossessed by the Unit Corporation on August 1, 1951, there was evidence that when, around the middle of June, a prospective purchaser, one Beane, approached the defendant, the latter told him, "I am very, very sorry, it is out of my hands now." When pressed on cross-examination for an explanation as to why he made no effort to sell Lampesis' shovel to Beane, Comolli replied only that it was because of "one circumstance, which I'd rather not state." The plaintiff, relying on the promise of the defendant, who he knew was in the business and sold "that make of shovel," to get him $11,500 for his shovel and to fend off the Unit Corporation until the sale could be made, kept his shovel until, due to his failure to make his installment payments, it was repossessed as previously stated. The defendant was aware that had Lampesis' sale to the city been consummated it would have saved him from the financial difficulties which overtook him.

Shortly after it was repossessed the defendant sold the shovel for the Unit Corporation for $10,200, realizing another commission of $510 and receiving an additional $600 on the balance due him from the plaintiff on account of the loan made at the time of the original purchase. Comolli admitted that he received a total of over $2,000 in commissions which he would not have obtained had

the plaintiff sold his shovel to the city. The defendant conceded in cross-examination that Lampesis' shovel at $10,200 was "priced very high" and that anything "over $10,000 was a lot of money" for a secondhand machine.

As showing its desire to buy Lampesis' shovel, the city of Dover as late as April 10 wrote Lampesis' attorney that although the twenty days had expired on April 5, which were originally given the plaintiff under the March 16 offer to clear the title and to make repairs to his shovel, they would allow him three days more to do so and would still go through with the purchase. Commencing on April 5, three attachments were made on the shovel, which had previously been unencumbered, the first for $100, the second for $2,000 on April 6, and the third for $2,000 on April 25. The plaintiff claimed that as a result of his failure to make his sale, other creditors repossessed much of his equipment, causing him to lose eight or nine thousand dollars.

It is true that fraud and deceit are never to be presumed but must be established by clear and convincing proof and cannot be implied from doubtful circumstances which merely awaken suspicion. *Ibey* v. *Ibey,* 93 N. H. 434, 436, and authorities cited. However, the proof need not be absolute but may be founded on circumstances such as existed here where the defendant's motive to mislead was strong and his conduct both before and after the misrepresentation complained of evinced a controlling intent to look after his own interests rather than carry out his commitments to the plaintiff. See *Morgan* v. *Morgan,* 94 N. H. 116. "A false statement as to what a person thinks (*Sleeper* v. *Smith,* 77 N. H. 337, 339), as well as one as to what he knows in respect to a particular matter (*Stewart* v. *Stearns,* 63 N. H. 99) is actionable, if it is made to defraud." *Ouilette* v. *Theobald,* 78 N. H. 547, 548. The evidence warranted a finding that the defendant represented that the plaintiff's shovel had a resale value of $11,500.

In this connection the defendant argues that the plaintiff's testimony, especially as to his conversations with the defendant is subject to numerous contradictions and errors and should not be believed. While credibility may become a matter of law (*Wilson* v. *Bank,* 95 N. H. 113, 115), it is only in clear cases that the court has seen fit to apply this doctrine (see *Romano* v. *Company,* 95 N. H. 404, 407), such as in situations where the testimony was contrary to undisputable physical facts. *Brown* v. *Mailhot,* 89 N. H. 240. We do not believe the evidence here falls within this

class, but rather it seems to us that the contradictions involving such matters as dates of meetings, and the precise wording of what was said at them, together with other conflicts, are properly for the jury to resolve. *Clover &c. Co.* v. *Smith Co.*, 96 N. H. 491, 493, and cases cited. The jury's findings that the plaintiff believed misstatements made by the defendant and relied on them to his detriment are supported by the record and it follows that the defendant's exceptions to the denial of his motions for a nonsuit and directed verdict are overruled. *Hall* v. *Insurance Co.*, 91 N. H. 6, and authorities cited.

With reference to the question of damages the Court's charge apparently permitted the jury to assess the plaintiff's award on two different theories. The first was that the plaintiff might recover the difference between what he would have received had the defendant's representation that he would sell the shovel for $11,500 been true and what the plaintiff actually did receive, plus any incidental damages which they could find with reasonable certainty were caused by the fraud. No exception was taken to this instruction which is in accordance with our law (*Hunt* v. *Company*, 94 N. H. 421, 424, and cases cited), and which we believe represents the majority view. McCormick, Damages, s. 121; Developments in the Law, Damages, 61 Harv. L. Rev. 113, 173.

In addition, the Court charged in accordance with a second or minority rule (*McCormick, supra;* 61 Harv. L. Rev., *supra*) that together with the damages above mentioned, the plaintiff was entitled to recover "all the loss he has sustained . . . including fair value of the right he relinquished as it existed when the fraud was practiced upon him." This would permit the plaintiff to recover for the difference between what he got for his shovel and what he gave up, that is, the $10,000 offer from the city. It thus appears the jury was allowed to include as damages the difference between what Lampesis got for his shovel and the value of the $10,000 offer from the city which he gave up, plus the difference between what he would have gotten for the shovel had the promised $11,500 sale been made and what he actually got, together with incidental damages. This was the same situation as existed in the *Hunt* case, *supra*, 424, and for which a new trial was ordered upon exception to a similar charge. In the present case no exception was taken and the charge became the law of the trial. *Zielinski* v. *Cornwell*, 100 N. H. 34, 39, and cases cited.

However, the defendant did except to the Court's failure to

instruct the jury that if they found for the plaintiff they should deduct "the reasonable value of the use of the shovel from the date on which the agreement would have been performed until he lost possession of it." Under the second rule of damages charged, the plaintiff was not entitled to recover for both the loss of the $10,000 offer by the city and to retain the money he received for the use of the shovel after the date when he would have conveyed it to the city but for the defendant's misrepresentation. It is apparent under the charge as given, and assuming it to be the law of the trial, that the failure to give the defendant's requested instruction was error. In all the circumstances, we believe fairness to both parties requires a new trial.

In this event, since the question may again arise, we deem it advisable to pass upon the propriety of permitting the jury to include in their verdict as they evidently did as an element of damages the "eight or nine thousand dollars" which the plaintiff claims he lost as a result of the repossession of other equipment by other creditors after his proposed sale to Dover failed to materialize. Our law is that consequential damages for fraud must be such as can be reckoned with reasonable certainty. *Hunt* v. *Company*, 94 N. H. 421, 424, and cases cited. The plaintiff's brief and unsupported statement that other creditors "all kind of jumped" him after the failure of the Dover sale is not sufficient to warrant a finding that it is reasonably certain the loss of this equipment was caused by the defendant's misrepresentations, nor did the evidence justify a finding that the damages thereby caused the plaintiff amounted to "eight or nine thousand dollars." The result reached renders unnecessary consideration of other exceptions and the order is

*New trial.*

WHEELER, J., did not sit; the others concurred.