Hillsborough,
No. 6080.

EDWARD SHERIS *v.* ARCHIE THOMPSON *& a.*

November 2, 1971.

*Leonard, Leonard, Prolman & Prunier*, and *Thomas J. Wilgren* of Massachusetts ( *Mr. Wilgren* orally ), for the plaintiff.

*McLane, Carleton, Graf, Greene & Brown* and *Peter B. Rotch* ( *Mr. Rotch* orally ) for the defendants and intervenors.

GRIMES, J. In this real property dispute, the plaintiff seeks a new trial on the grounds of fraud and that he did not receive a fair trial because he was required to proceed with substitute counsel after his original counsel withdrew during trial.

The case began with a petition in which plaintiff claimed to own certain property upon which the defendant Thompson had built a house and had begun construction of another. The defendant Draper, a surveyor, was alleged to have trespassed on

plaintiff's property in the process of making a survey for defend-ant Thompson. Plaintiff prayed that his title be established and that the defendants be restrained from further trespassing.

The plaintiff is the owner of three contiguous tracts of land in Wilton. The gist of plaintiff's claim is that the location of these tracts on the ground is such as to include the land claimed by Thompson. The owners of several other lots were allowed to intervene on the basis that plaintiff's claim posed a threat to their titles also.

The case was heard before a Master ( *Harrison E. Smith*, Esq. ), who found for the defendants. His recommendations were approved by the court and a decree entered accordingly on Sep-tember 25, 1968. Thereafter, plaintiff's motion to reopen, alleging newly-discovered evidence, was denied by the court. Plaintiff then moved to reopen on the basis of a new survey which it was claimed would have aided substitute counsel if it had been avail-able to him at the trial. This motion was denied by the court after hearing and study of a deposition, and plaintiff then filed a bill of exceptions in which he claims not to have had a fair trial. The matter was transferred here on a reserved case by the Superior Court ( *Leahy*, C.J. ).

The evidence before the master began on June 24, 1968 follow-ing a view. The evidence reveals that the land of all the parties lies southerly of Stoney Brook, so-called, which in various deeds is referred to as "the river." Defendant Thompson's property lies southerly of plaintiff's land. It appeared through the testimony of plaintiff's first witness, a lawyer title abstractor, that the de-scription in the deed to the tract making up the northeast portion of plaintiff's land describes its easterly boundary as running generally northerly "to the river, at marks 'LH' on a rock." It also appeared that essentially the same description appears in the deeds in plaintiff's chain for over one hundred years. No one claims that the location of the river has changed in the last one hundred years. The master stated that he had observed the "LH" rock on the river. Using this bound and using the courses and distances in plaintiff's deeds, his land does not include that which is claimed by the defendant. Plaintiff, however, claims that the "LH" rock seen by the master at the river is not his bound. His theory is postulated upon his location of a lot line in the original layout of the town, and using as a starting point for the above-mentioned tract a corner of walls several hundred feet southerly of the corner used by the defendants. Using the corner of walls

selected by the plaintiff and running the courses and distances in his deed, the master found that his easterly sideline falls five hundred feet short of the river. There was evidence that if one starts at the corner of walls selected by the defendants, the courses and distances lead directly to the " LH " rock at the river. The plaintiff claims the true bound is another rock with the letters " LH " which has been defaced. The master considered this claim and rejected it. There was ample evidence, including courses, distances and monuments, in plaintiff's and other deeds to support the master's finding as to the location of the " LH " bound.

The master found that the plaintiff had had four different surveyors survey his land and that "the surveyors engaged by Petitioner, Dr. Sheris, all testified consistent with the testimony of Defendant Draper . . . " whose plan the master found showed the true location of the plaintiff's land as contended by the defendants.

About midday on June 27, the fourth day of trial, after plaintiff's witness, Hyde, a surveyor, had been partially examined, plaintiff's counsel requested a continuance of the case and asked leave to withdraw "for reasons I have expressed today." The master asked plaintiff if he heard what was said and on receiving an affirmative answer granted a continuance until 9 o'clock the next morning, adding: " at which time Dr. Sheris will be here with an attorney or he will be defaulted."

The next item in the record shows that new counsel, Mr. Richard Leonard, appeared at 9 o'clock on July 1, 1968 and stated that he had been requested to represent the plaintiff on June 28. He contended that he had insufficient information to continue with the case at that time. After some discussion, the master continued the case until July 3 for another view and then to July 8 for the taking of evidence. The record for July 8 reveals that Mr. Leonard, without objection, proceeded to continue the examination of the surveyor Hyde whose testimony on cross-examination was found to support the defendants' claim. The case proceeded each day until July 11 when plaintiff presented the testimony of a surveyor, Pfeffer, who had been engaged to survey the property after the change in counsel. His testimony was found by the master to support defendants' contention and the transcript supports this finding. It was requested that plaintiff be permitted to file Pfeffer's plan after the close of the evidence because he had not had time to complete it. After some delay, plaintiff filed an unsigned plan bearing no title which the master found was in-

consistent with Pfeffer's testimony and had been prepared by Dr. Sheris.

The evidence at the trial fully supports the master's findings as to the location of plaintiff's land. Plaintiff claims, however, that either " by accident, mistake, misfortune or design " a fraud was perpetrated on the court and also that he did not have a fair trial because his substitute counsel did not have time to prepare before having to continue with the case.

Plaintiff's claim of fraud was pressed by brief but not at oral argument. It relates to an alleged defaced rock, some changes in some recorded deeds, and the location of original lot and range lines. These were all matters which were considered by the master, who found for the defendants. The defaced rock contended by the plaintiff to be the " LH " rock was found to be five hundred feet south of the river. The master was justified in finding that the " LH " rock at the river as contended by defendants was the bound referred to in the deeds for over one hundred years. *Rautenberg* v. *Munnis,* 108 N.H. 20, 22, 226 A.2d 770, 772 ( 1967 ).

Another allegation of fraud is the fact that a distance in a deed dated 1792 ( Pet. Exh. 21 ) was changed in the registry sometime after recording from 120 rods to 100 rods and that this differ- ence favors the defendants. The change was discovered because of a microfilm copy made at the registry before the change. Con- trary to plaintiff's brief, this change was known to plaintiff and his original counsel at least on the first day of the trial, if not before. It was first referred to by defendants' counsel and then by plaintiff's abstractor on the witness stand. The exhibit was introduced by plaintiff's original counsel over objection of de- fendants who claimed it was irrelevant because it related to land north of the river. Plaintiff's original counsel stated that the al- terations had nothing to do with this case. There is nothing in the circumstances which indicates that defendants altered the deed or concealed its alteration, and it is clear that plaintiff's counsel knew of the alteration at trial.

We find no basis for the plaintiff's further claim that defendants fraudulently misrepresented the location of certain lines of the lots in the original town layout which the town history states were inaccurate.

It is basic law that fraud will never be presumed, but must be established by clear and convincing proof and that it will not be

implied from doubtful circumstances. *Lampesis* v. *Comolli*, 101 N.H. 279, 140 A.2d 561 (1958); *Hoyt* v. *Horst*, 105 N.H. 380, 390, 201 A.2d 118, 125 (1964). The evidence in this case falls short of that test.

The plaintiff's claim that he did not receive a fair trial must also be rejected. The record does not disclose the reason why the master permitted plaintiff's counsel to withdraw on the fourth day of trial. The master was justified in insisting that the case continue without undue delay in view of the hardship on the defendants. In fact a continuance was granted which resulted in new counsel having ten days from the time he was approached by plaintiff to become acquainted with the case. No indication was given at the end of this continuance that counsel was not then ready to proceed.

Plaintiff was given additional time for a surveyor, engaged after new counsel entered the case, to prepare a plan, and it was agreed that the plan could be submitted after the evidence was closed. The plan submitted was found to be contrary to the surveyor's testimony and the master found that it had been prepared by Dr. Sheris. Now plaintiff seeks a new trial on the basis that yet another surveyor, this one from Massachusetts, was engaged in February 1970 who claims to have conducted a "closed angle and taped" survey which supports plaintiff's claim. Plaintiff claims that if he had had this survey at the trial and his counsel had been fully prepared, a different result would probably be reached.

It appears to us that plaintiff has had sufficient opportunity to obtain expert testimony in support of his contention. There appears to be no basis for a claim that substitute counsel did not have time to prepare to represent plaintiff on the basis of the then known evidence and witnesses. There must be an end to litigation sometime, and on the record before us, the plaintiff has failed to show that he did not receive a fair trial or that justice requires that he be heard further. We find no error in the action of the trial court denying the motion to reopen and for a new trial. *Rautenberg* v. *Munnis*, 109 N.H. 25, 241 A.2d 375 (1968).

*Exceptions overruled; decree affirmed.*

All concurred.