**Jack Clayton KIDD, Appellant,**

v.

**Rotha Carolyn KIDD, Appellee.**

No. 12859.

Court of Civil Appeals of Texas, Austin.

July 11, 1979.

Rehearing Denied Aug. 1, 1979.

Samuel D. McDaniel and William R. Travis, McDaniel & Travis, Austin, for appellant.

John F. Campbell, Campbell & Davidson, Austin, for appellee.

O'QUINN, Justice.

Respondent Jack Clayton Kidd in a divorce action below has appealed from the trial court's judgment by which respondent was ordered to execute a promissory note in the principal amount of $30,000 payable to Petitioner Rotha Carolyn Kidd over a period of five years. Appellant contends that (1) the note amounts to payment of alimony after the final decree of divorce and (2) even if not alimony, the note results in such an inequitable division of the community estate as to constitute abuse of discretion by the trial court.

The principals in this lawsuit were married in June of 1961. After two failures for the wife to carry a child to full gestation and loss of a third child who was stillborn, the parties adopted two children, a male child born in January of 1967 and a female child born in September of 1969.

After two temporary separations, the first beginning in April of 1976, the wife filed suit for divorce alleging the marriage had become insupportable and seeking division of the community estate and custody of the two children.

The issue of custody of the children was tried before a jury. After extensive testimony, in the course of which the wife's extramarital intimacies with other men were disclosed, the jury found, "considering only the best interests of the children," that the father should be appointed their managing conservator. The trial court in conformity with the jury's finding later awarded custody to the father.

A separate hearing, before the court without a jury, was held with respect to the value and ultimate division of the community estate. It is from the court's order, resulting from the hearing on property issues, that appellant seeks review before this Court.

■ Appellee urges that appellant accepted benefits of the judgment affecting property and is therefore estopped to appeal. The trial court ordered the homestead sold, with the net proceeds, after discharge of debts traceable to the property, to be "divided equally among [*sic*] the Respondent and the Petitioner." Appellee contends that appellant "voluntarily accepted benefits of the trial judgment by accepting a share of the proceeds from the sale of the homestead," and therefore is estopped to appeal under the general rule stated in *Carle v. Carle,* 149 Tex. 469, 234 S.W.2d 1002, 1004 (1950), that "A litigant cannot treat a judgment as both right and wrong, and if he has voluntarily accepted the benefits of a judgment, he cannot afterward prosecute an appeal therefrom."

The Supreme Court in *Carle* recognized certain exceptions to the rule and stated, "Where an appellant accepts only that which appellee concedes, or is bound to concede, to be due him under the judgment he is not estopped to prosecute an appeal which involves only his right to a further recovery." In his appeal appellant prays that the judgment be reformed to vacate the order requiring execution of the note for $30,000, and in effect that the judgment as reformed be affirmed.

It appears undisputed that both parties, while before the trial court, recognized that sale of the homestead, payment of debts traceable to it, with equal distribution to the husband and wife of the next proceeds, provided an expeditious approach to ultimate division of the community estate. The principal and foremost contest on appeal concerns the requirement that appellant execute a note for $30,000, secured by 33 acres of land awarded appellant under the judgment, which appellant contends is either alimony, or, if not alimony, then an unequal division of the estate.

Although appellant brings twelve points of error, the main thrust of his attack on the judgment is directed to the court's order that appellant execute the note for $30,000. Appellant takes the position that if relief be granted under the first point, that is, if it be held that payment of the $30,000 note is payment of alimony and therefore against public policy, then appellant "will waive the other points in this brief."

Sale of the homestead was upon order of the court, and distribution of the proceeds was ordered by the court in a specific series of priority. No steps were voluntarily made by appellant, but only in compliance with the order of the court. Remand on the grounds urged would not affect appellant's right to the benefits accepted from sale of the homestead.

We conclude appellant's right to appeal falls under the exceptions recognized in *Carle v. Carle, supra; Wallace v. Wallace,* 371 S.W.2d 918, 919 (Tex.Civ.App. San Antonio 1963, writ dism'd); *Haggard v. Haggard,* 550 S.W.2d 374, 376 (Tex.Civ.App. Dallas 1977, no writ); *Coplin v. Coplin,* 579 S.W.2d 278 (Tex.Civ.App. Dallas 1979, no writ), and other cases cited.

Appellant contends that the portion of the trial court's judgment requiring appellant to execute a note for $30,000, payable in installments to appellee over a period of years, constitutes an order to pay alimony in contravention of statutes and public policy of this state. After reviewing definitions of alimony and the case law pertaining to alimony, the Supreme Court in 1967 stated: "When its true meaning is distilled from the statutes and the court decisions of this State, alimony which contravenes the public policy of the State is only those payments imposed by a court order or decree on the husband as a personal obligation for support and sustenance of the wife after a final decree of divorce." *Francis v. Francis,* 412 S.W.2d 29, 33 (Tex.Sup.1967).

Monetary payments by one party to the other after divorce may be required by the trial court if the payments are referable to rights and equities of the parties in and to property at the time of dissolution of marriage, and such payments and division will not be regarded as allowance of alimony in violation of public policy. *Garrett v. Garrett,* 534 S.W.2d 381, 382 (Tex.Civ.App. Houston (1st) 1976, no writ); *In Re Marriage of Jackson,* 506 S.W.2d 261, 267 (Tex. Civ.App. Amarillo 1974, writ dism'd); *Marks v. Marks,* 470 S.W.2d 83, 86 (Tex.Civ. App. Tyler 1971, writ ref'd n.r.e.). In the case now under review a certain 33.33 acres

of land, purchased under the Veterans Land Board program during the marriage, and awarded to appellant by the trial court, appears to be the property to which the trial court made the $30,000 note referable.

The trial court, in paragraph 6(O) of the judgment, listed the 33.33 acres of land as community property of the parties, and earmarked the tract as "being generally refered [*sic*] to in these proceedings as the Friday Mountain Acres . . . ." The Friday Mountain Acres were awarded to appellant by the court (as item 6 of that award), and in item 7 of property awarded to appellee the court described the $30,000 note and provided that it be "secured by Respondent's interest in the Friday Mountain Acres." Thereafter in the judgment the court added an order that respondent execute and deliver the note dated December 30, 1977.

At the hearing before the court on property values and division appellant testified that the Friday Mountain Acres might be "evaluated anywhere from a thousand to fifteen hundred to eighteen hundred [dollars per acre]," depending on the market. In response to the inquiry, "Is this property for sale?" appellant testified, "No, it will never be sold. It is part of a family estate that will never be sold," referring to adjacent land owned jointly by appellant and his brothers, together with adjacent land owned by their parents. If the trial court accepted appellant's highest figure, or $1,800 per acre, the total tract of 33.33 acres could have been valued at $59,994.00. The note for $30,000.00 would constitute approximately one-half of that total value.

We hold that the note for $30,000 is so directly referable to property of the community estate, and to division of property by the court, that the note cannot be regarded as allowance for alimony in violation of public policy of this state.

In the nature of an alternative contention, appellant insists that "If it [the note] is not alimony, it causes the property division to be unjust." Under points of error two through five, appellant urges that, in exercise of discretion allowed trial courts,

the court made "an unequal division of the community estate and as a result abused its discretion by awarding the wife substantially more than her half of the community estate," and that the court erred in specified findings of fact essential to support division made of the property.

Since 1841 trial courts in Texas have been empowered " . . . in pronouncing a decree of divorce, to order a division of the estate of the parties to the divorce suit in such way as to the court seemed just and right, having due regard to the rights of each party and of the children . . ." *Hedtke v. Hedtke,* 112 Tex. 404, 248 S.W. 21 (1923). The present statute, Section 3.63, Texas Family Code, is essentially the same as enacted in 1841. In *Hedtke* the Supreme Court held: "Its language [of the statute] ought to be given the meaning uniformly ascribed to it by this court, and that is, that the court pronouncing a decree of divorce is invested with wide discretion in disposing of any and all property of the parties, separate and community, and that its action, in the exercise of such discretion should be corrected on appeal only where an abuse of discretion is shown in that the disposition made of some property is manifestly unjust and unfair." (248 S.W. 23).

In 1974 the Supreme Court, after quoting Section 3.63 in full, again stated the rule of *Hedtke* in this language:

"Texas Courts have held that such division does not have to be equal, and appellate courts have held it must be presumed that the trial court exercised its discretion properly, and that a case should be reversed only where there is a clear abuse of discretion. In the case of *In re Marriage of McCurdy,* 489 S.W.2d 712 (Tex. Civ.App. Amarillo 1973, writ dism.), the court held that equity required an unequal division of the community property be made. It is well established that Texas divorce courts are given wide discretion in making division of the property of the parties. That discretion will not be disturbed on appeal unless the court has clearly abused its discretion. *Hedtke v. Hedtke,* 112 Tex. 404, 248 S.W. 21 (1923)."

*Bell v. Bell,* 513 S.W.2d 20, 22 (Tex.Sup. 1974).

In *McCurdy,* noted by the Supreme Court in *Bell,* the court restated the rule that "The trial judge is not required to divide community property equally . ." (489 S.W.2d 717, col. 1). Appellant did not have an absolute right to one-half of the community property. *Mahrer v. Mahrer,* 510 S.W.2d 402, 404 (Tex.Civ.App. Dallas 1974, no writ); *Miller v. Miller,* 463 S.W.2d 477, 480 (Tex.Civ.App. Tyler 1971, writ ref'd n.r.e.).

In the present case the trial court filed findings of fact and conclusions of law. Appellant complains of findings 7 and 8, and the conclusions related to these findings, by which findings the court concluded (1) division of the community estate found in the judgment "is just and right, having due regard for the rights of each party and the children adopted of the marriage," and (2) "such division is manifestly fair and equitable to both parties." Appellant also urges error in the finding that appellee's gross income at the time of divorce was $7,200 annually and that she has little opportunity for advancement; and error in the finding that appellant "owned substantial separate property at the time of dissolution of the marriage."

The record shows that at the time of trial appellee was employed at Durham Business College at a salary of $7,200 per year, and that appellant, as a medical doctor practicing in pediatrics, had a gross annual income of $60,000, plus certain fringe benefits. Appellant testified that he owned as his separate property an undivided one-third interest in a tract of 75 acres of land in the Friday Mountain Ranch properties, in the same area with the 33.33 acres known as Friday Mountain Acres. If the court believed the 75 acres to have a per acre value equal to the top value appellant placed on the 33.33 acres, the jointly owned tract would be worth about $135,000, and appellant's interest would amount to about $45,-000. The term "substantial" separate property, as used by the court, is relative, but separate property worth $25,000 (at appel-

lant's lowest figure of $1,000 an acre) or $45,000 (at $1,800 an acre) can hardly be termed "insubstantial." The record shows, and the court found, that appellee owned no separate property at the time of dissolution of the marriage.

The record also shows, and the trial court found, that appellant is in good health, whereas appellee has an incurable disease (*lupus,* a cutaneous disease occurring in several forms), which was in remission at the time of trial, and by appellee's testimony had been in remission eight years or more. Appellee has no insurance covering hospitalization in event of recurrence of *lupus.* Appellant testified at trial that his wife's ailment "is typically a type of disease that becomes chronic with occasional flare-ups and remission," and that although some "patients just lead a perfectly normal life, with occasional flare-ups," to other "patients, it can be very devastating . . ."

■ Appellant complains that the court's judgment places the burden of child support entirely on him, and that no weight seems to have been given, in dividing the property, to the evidence that appellee was at fault, by her personal conduct, in bringing about separation and eventual divorce of the couple. Appellant sought and obtained custody of the two children, and as managing conservator of the minors appellant retains the rights and duties of a parent, to the exclusion of the other parent, subject to rights and duties granted the possessory conservator. (Secs. 14.02, 14.04, Family Code). The action in trial, by which appellant became the managing conservator, was taken, as required by statute, "considering only the best interests of the children." The fault of one party in breaking up the marriage is not alone a controlling factor in arriving at a just division of the community property. A trial court may take into consideration a number of things, including the matters already referred to as shown by the record. *Miller v. Miller, supra,* 463 S.W.2d 477, 480; *In Re Marriage of Jackson,* 506 S.W.2d 261, 266 (Tex.Civ.App. Amarillo 1974, writ dism'd).

■ In reviewing action of the trial court dividing the community estate in a divorce case, and in deciding whether the trial court abused its discretion, the appellate court will consider the evidence as a whole, with all reasonable inferences and deductions that can be properly drawn therefrom considered in the light most favorable to appellee. *Womble v. Womble,* 502 S.W.2d 886, 889 (Tex.Civ.App. Fort Worth 1973, no writ). The reviewing court indulges a presumption in favor of the trial court's exercise of its discretion regarding division of property in a divorce action. *Waggener v. Waggener,* 460 S.W.2d 251 (Tex.Civ.App. Dallas 1970, no writ); *Cusack v. Cusack,* 491 S.W.2d 714, 721 (Tex.Civ. App. Corpus Christi 1973, writ dism'd).

■ Guided by the rules we believe to be firmly established in a long and reasonably consistent growth of case law, respecting exercise of discretion by trial courts in dividing property in the course of a divorce action, we fail to find a showing that the trial court abused its discretion in this cause. It may be true in some instances that an appellate court, given the power vested in the trial court to exercise discretion initially, might reach a different result. But an appellate court is limited to review, to determine whether the trial court, considering the evidence as a whole, exercised its discretion without abuse in dividing property between the parties, as required under Section 3.63 of the Family Code.

We have examined with due care points of error six through twelve, together with argument and authorities presented under the points by appellant, and fail to find in these contentions merit sufficient to require reversal of the trial court's judgment. The points are overruled.

The judgment of the trial court is affirmed.

Affirmed.