Rockingham
No. 92-053

CAROLYN LEARY

v.

ARTHUR LEARY

April 28, 1993

*Boynton, Waldron, Doleac, Woodman & Scott, P.A.*, of Portsmouth (*Patti Blanchette* on the brief and orally), for the plaintiff.

*Arthur Leary*, by brief and orally, *pro se.*

THAYER, J. The defendant appeals the recommendation of the Master (*Stephanie T. Nute*, Esq.), which was approved by the Superior Court (*Gray*, J.), ordering the defendant to discharge his mortgage on the marital home and to accept a mortgage on the marital home that would be second in priority to a $100,000 mortgage. The defendant contends that the order represents an impermissible modification of a court-ordered property settlement which provided that the defendant had a mortgage second in priority to a $20,000 mortgage. We agree and, therefore, vacate and remand.

The parties were divorced in May 1989. The divorce decree provided that sixty percent of the total equity in the marital home was to be allocated to the plaintiff, with the remainder allocated to the defendant. At the time of the divorce, a balance of approximately $20,000 was due on the original mortgage in favor of a Newburyport bank. The defendant's share of the equity equaled $33,200. Paragraph 9 of the decree provides:

> "Plaintiff shall have the option of purchasing Defendant's equity within 12 months of the effective date of this decree by payment to him of $33,200.00. In the event she does not so purchase Defendant's equity, she shall retain possession

of the marital home until the emancipation of the parties' youngest child, the sale of the home, her remarriage, or her cohabitation in a relationship closely resembling a marriage. At such time, Defendant shall be paid his equity in the real estate . . . ."

The decree also provides that the defendant execute a quitclaim deed to all his right, title and interest in the marital home in favor of the plaintiff. In return, the plaintiff was to execute and deliver a mortgage to secure payment of the defendant's equity in the real estate. In September 1989, the plaintiff filed a motion to extend the option period for purchasing the defendant's share of the equity in the home, and to reduce the defendant's equity by the amount of arrearages that had accrued since the divorce. Both parties testified at the motion hearing.

By order dated January 11, 1990, the Superior Court (*McGuire*, J.) extended the time in which the plaintiff could purchase the defendant's share of the equity to within three years of the effective date of the divorce decree, and ruled that "[a]t the end of such period the Plaintiff may reduce the $33,200.00 by the amount of any child support arrearage" and other unreimbursed expenses. The court determined that the defendant owed $2,364 in arrearages. In February 1990, the Superior Court (*McGuire*, J.) ordered the plaintiff to execute and deliver a mortgage on the marital home to the defendant. After subtracting the amount of arrearage, the plaintiff granted a $30,836 mortgage to the defendant.

In early July 1991, the plaintiff obtained another mortgage on the marital home. The $100,000 mortgage was held by North Atlantic Mortgage Company, and the proceeds of the mortgage were to be used to satisfy two pre-existing mortgages: the first in favor of a Newburyport bank; the second in favor of the defendant. The funds remaining after the first two mortgages were satisfied would be used to provide start-up funds for a business the plaintiff wished to establish. The plaintiff discharged the first mortgage, held by the Newburyport bank, with part of the proceeds of the loan. The plaintiff, however, was apparently unwilling to discharge the defendant's mortgage, and filed a motion to reach the loan proceeds earmarked to satisfy the defendant's mortgage. The mortgage company, uncertain as to who would receive the loan proceeds, provided a check payable to the Rockingham County Superior Court in the amount of $33,200, noting that the disbursement was to pay off the defendant's mortgage.

A hearing was held on October 11, 1991, after which the master recommended the following:

"The Defendant is instructed to execute the discharge of the existing mortgage and to return same to Attorney Blanchette [representing the plaintiff] for recording no later than November 1, 1991 or a show cause hearing will be scheduled. Attorney Blanchette will prepare the discharge and forward it to the defendant for his sign[a]ture. Upon receipt of the signed discharge, the Plaintiff will execute and record a new subordinate mortgage as to the former marital home."

The master's recommendation was approved by the court on October 25, 1991. The defendant filed a motion to reconsider the October 25 order, and the plaintiff filed a motion to allow release of the escrowed funds. In support of her motion, plaintiff argued:

"This amendment is of utmost importance to the Plaintiff in that she has taken out a l[ie]n to start her business and a portion of the funds have been escrowed pending the receipt of an order allowing their release to her. . . . While the decision of the Master would allow refinancing to be completed, it did not address the funds held in abeyance."

The Master (*Stephanie T. Nute*, Esq.) recommended that the plaintiff's motion be granted and authorized the clerk of the court to endorse to the plaintiff the $33,200 check earmarked to pay off the defendant's mortgage.

The Superior Court (*Barry*, J.) approved the master's recommendation, and the escrowed check was signed over to the plaintiff on December 2, 1991. The defendant's appeal followed. The defendant argues that by requiring him to discharge his mortgage, which at the time of divorce was second in priority to a $20,000 mortgage, the court improperly modified the property settlement provided for in the divorce decree by ordering his mortgage to become second in priority to a $100,000 mortgage.

The plaintiff claims that the court order requiring the defendant to discharge his $33,200 mortgage and become subordinate to a $100,000 mortgage merely gives the plaintiff security for thousands of dollars of child support arrearages, and does not harm the defendant's property interests because the marital home was assessed at $132,900 in January 1989. According to the plaintiff's calculations, the defendant's equity in the home is to be reduced by $9,000 owed for child support, leaving him with equity worth $23,900, which could

be paid out in the event the $100,000 mortgage is foreclosed. The plaintiff, however, already had security for child support arrearages because the January 11, 1990, order provided that she could reduce the value of the defendant's equity in the marital home "by the amount of any child support arrearage." The defendant does not dispute the plaintiff's right to setoff arrearages against the amount owed to him under the property settlement.

■■ The defendant's mortgage on the marital home represented his property settlement in the divorce. A property settlement decreed by a court, unlike an order to pay alimony or child support, is not an order subject to modification upon a showing of changed circumstances. *See Labbe v. Labbe*, 137 N.H. 53, 55, 623 A.2d 1320, 1321 (1993); *McSherry v. McSherry*, 135 N.H. 451, 453, 606 A.2d 311, 313 (1992). Property settlements can be modified only upon a showing of fraud, undue influence, deceit, misrepresentation, or mutual mistake. *Grabowski v. Grabowski*, 120 N.H. 745, 747, 422 A.2d 1040, 1042 (1980); *Durkin v. Durkin*, 119 N.H. 41, 42, 397 A.2d 304, 304 (1979).

■■ Property awarded to a party through court-approved settlement, however, can still be reached by creditors to satisfy debts or provide security for debts owed. *Dubois v. Dubois*, 121 N.H. 664, 669, 433 A.2d 1277, 1280 (1981). A person obligated to make child support payments can be ordered to convey certain property to a trustee or otherwise provide security for future payments. *Id.* at 669, 433 A.2d at 1280–81. "In all cases where alimony or an allowance shall be decreed for a spouse or children the court may require security to be given for the payment thereof." RSA 458:21 (1992).

If the plaintiff had asked the superior court to provide security for the defendant's child support payments, it would have been within the court's authority to, for example, discharge the defendant's mortgage, but order the proceeds or some portion thereof to be placed in trust for the benefit of the children. In this case, however, the plaintiff did not make such a request. Rather, she sought to reach the defendant's equity in the marital home to aid her in starting her own business.

The superior court had no authority, on these facts, to give the plaintiff the escrowed check representing the defendant's property settlement with no restrictions placed upon her use of the funds. Nor did the court have the authority to modify the defendant's property settlement by ordering him to accept a position worse than that provided for in the original divorce decree. Certainly, from the defend-

ant's point of view, receiving a mortgage subordinate to a $100,000 mortgage when he originally had a mortgage subordinate to a $20,000 mortgage places him in a worse position in terms of having his mortgage fully satisfied.

■ The court erred in ordering the defendant to discharge his first mortgage and to take a more subordinate mortgage, and in paying out the escrowed funds to the plaintiff. Such an order constituted an impermissible modification of the defendant's property settlement as there was no predicate showing of fraud, deceit, or misrepresentation. We therefore reverse.

*Reversed.*

All concurred.