Rockingham
No. 92-291

MICHELE J. SHAFMASTER

v.

JONATHAN S. SHAFMASTER

May 16, 1994

*Shaheen, Cappiello, Stein & Gordon, P.A.*, of Concord (*Robert A. Stein* and *Paul A. Maggiotto* on the brief, and *Mr. Stein* orally), for the plaintiff.

*Wadleigh, Starr, Peters, Dunn & Chiesa*, of Manchester, *Ford, Ford & Weaver*, of Portsmouth, and *David Berman*, of Medford, Massachusetts (*Eugene M. Van Loan, III & a.* on the brief, and *Mr. Berman* orally), for the defendant.

BROCK, C.J.   The plaintiff, Michele Shafmaster, appeals an order by the Superior Court (*Gray,* J.) approving the recommendations of the Marital Master (*Leonard Green,* Esq.) to deny her petition to bring forward and modify the property settlement in her divorce

decree. The defendant, Jonathan Shafmaster, cross-appeals the Superior Court's (*Gray*, J. and *Dunn*, J.) orders approving the Marital Master's (*Deborah Kane Dickinson*, Esq.) recommendations to deny his motions to dismiss the plaintiff's petition for failure to state a cause of action and failure to elect between available remedies. For the reasons that follow, we affirm denial of the defendant's motions and vacate the court's order denying the plaintiff's petition.

Once again we are asked to review the unhappy circumstances of a divorce property settlement. After nearly seventeen years of marriage, the plaintiff and the defendant were divorced in June 1987 on the grounds that irreconcilable differences had caused the irremediable breakdown of their marriage, a "no-fault" divorce. The defendant's attorney had represented the defendant's business interests for several years and was a social friend of the plaintiff and the defendant. At the beginning of the divorce process, the plaintiff wanted to meet with the attorney, who was then representing the defendant, and the defendant arranged a meeting. The defendant's attorney recommended that the plaintiff work out a settlement with the defendant to avoid having the divorce deteriorate into litigation. He warned:

> "'You know Jon as well as I do. Sometimes, I think that the process of lawyering can produce, what I call, the uncertainty principle, in which the act of legal activity, the kind of activities that lawyers go through, tends to begin to generate frictions that make it impossible to have prudent discussions, . . . .
>
> It is my impression that we could get into that kind of impasse, if you started in that direction. Whereas, I think if you prepare yourself in a preliminary basis, by working with somebody with financial expertise, and then when that is assembled, and you are satisfied with where you are at, you then go and consult counsel. The environment may be more conducive . . . to a rational discussion as to what it is to be done here, and if the case can be settled and how it can be settled.'"

Based on the recommendation of the defendant's attorney, the plaintiff initially relied on a financial advisor, rather than an attorney, to assess the marital property, particularly the defendant's substantial business interests, and to advise her about a property settlement. The parties intended to proceed in a non-litigious manner, without formal discovery, in an atmosphere of cooperation.

To that end, during September 1986, the defendant's accountant provided the plaintiff's financial advisor with requested financial in-

formation including a financial statement dated April 30, 1986. By early December 1986, the plaintiff hired her own attorney. The parties, each represented by counsel, negotiated a property settlement agreement based on the financial information that had been provided to the plaintiff's financial advisor. Unknown to the plaintiff, her attorney or her financial advisor, the defendant had a new financial statement dated December 31, 1986, which he signed in March of 1987, that showed a significant increase in the value of his assets. In mid-May 1987, the plaintiff's attorney wrote to the defendant's attorney requesting that a new paragraph be added to the stipulation with the following language:

> "Each party acknowledges that they understand this Stipulation and that they have executed this stipulation after an opportunity to consult with counsel of their own choosing. Each party acknowledges that this Stipulation is fair, and equitable, that it is being entered into voluntarily, and that it is not the result of any duress or undue influence. *Each party acknowledges that he or she has been forthright with the other regarding the current status and value of their assets and financial affairs.*"

(Emphasis added.) The defendant's attorney refused to add the last sentence of the additional proposed language. He wrote:

> "Article 14 is new, per your suggestion. I have not included your suggested last sentence. We have provided you and [plaintiff's financial advisor] with all of the financial data you have requested, and I feel it is your responsibility to determine what the values are for property settlement purposes."

The stipulation was signed in final form on June 23, 1987, without the suggested final sentence in paragraph fourteen.

The parties' divorce decree approved and incorporated the permanent stipulation that provided for distribution of their considerable property. Neither party prepared a financial affidavit to attach to the permanent stipulation as required by Superior Court Rule 158. At the final hearing on June 23, 1987, which was attended by the plaintiff and her attorney but not by the defendant, the Master (*Raymond W. Taylor*, Esq.) waived the financial affidavit requirement and accepted the permanent stipulation. The master's recommendation of the divorce decree incorporating the stipulation was approved by the Superior Court (*Gray*, J.) on June 29, 1987.

In January 1989, the plaintiff petitioned the court to modify the parties' divorce decree alleging that the stipulated property settle-

ment was obtained by fraud through the defendant's intentional misrepresentation of material financial information. After a hearing, the master found that "while Defendant's counsel may indeed have had an obligation to update the financial information to the Plaintiff, the Plaintiff's counsel had knowledge of this potential problem, could have taken appropriate action if she and her client had desired to and chose not to so act." In denying the plaintiff's petition, the master concluded that because both parties were represented by counsel, they were obligated to act in their own best interests after a warning or "red flag" that there may be problems. The plaintiff appeals the denial of her petition to modify the parties' divorce decree.

On appeal, we will affirm the findings and rulings of the marital master unless they are unsupported by the evidence or are legally erroneous. *Giles v. Giles*, 136 N.H. 540, 547, 618 A.2d 286, 291 (1992). Property distributions or stipulations decreed by a court are not retained under the continuing jurisdiction of the court and will not be modified unless the complaining party shows that the distribution is invalid due to fraud, undue influence, deceit, misrepresentation, or mutual mistake. *Leary v. Leary*, 137 N.H. 161, 165, 623 A.2d 1346, 1348 (1993). Having alleged fraud, "the plaintiff must prove that the defendant made a fraudulent representation for the purpose or with the intention of causing the plaintiff to act upon it." *Proctor v. Bank of N.H.*, 123 N.H. 395, 399, 464 A.2d 263, 265 (1983). Each party to an agreement covenants by implication that he or she "will deal in good faith and deal fairly with the other." *Bursey v. Clement*, 118 N.H. 412, 414, 387 A.2d 346, 347 (1978) (quotations omitted). "One who makes a representation that is true when made is under a duty to correct the statement if it becomes erroneous or is discovered to have been false before the transaction is consummated." *Id.*, 387 A.2d at 348; *Bergeron v. Dupont*, 116 N.H. 373, 374, 359 A.2d 627, 628 (1976); *see also Centronics Corp. v. Genicom Corp.*, 132 N.H. 133, 139, 562 A.2d 187, 190–91 (1989). In contract negotiations, "equity imposes a duty to speak when one knows or ought to know that his silence is misleading and will induce another to act upon it to his damage." *Decatur v. Cooper*, 85 N.H. 250, 257, 157 A. 706, 710 (1931).

As noted by the marital master, the primary issue in this case involves the valuation of known assets rather than concealment of assets. The defendant contends that values included in his financial statements were opinions rather than facts, and, as such, cannot be the basis for fraud. The law is to the contrary. Opinions of value, if made to mislead, are fraudulent representations. *Sleeper v. Smith*,

77 N.H. 337, 338–39, 91 A. 866, 867–68 (1914); *see also Eno Brick Co. v. Barber-Greene Co.*, 109 N.H. 156, 158, 245 A.2d 545, 547 (1968); *Lampesis v. Comolli*, 101 N.H. 279, 283, 140 A.2d 561, 564 (1958).

We agree with the marital master that once financial information was requested and provided, the defendant had an ongoing obligation to provide current and accurate financial information. From the outset, the plaintiff's financial advisor understood that he would receive complete cooperation from the defendant to assess the property involved in the settlement and that the defendant's accountant was going "to give me all of the information that I was going to need to do my job." He asked for the defendant's most current financial statement used for borrowing purposes, and he understood that he would be kept current as to financial information. The defendant's accountant provided the financial statement dated April 30, 1986, which became the "crux" of the information relied upon by the plaintiff's financial advisor. In August, while the plaintiff and the defendant were still living together and the plaintiff had access to some of the defendant's financial information, she acquired and provided her accountant with some additional information about the defendant's finances and assets. Although the marital master granted a requested finding of fact which suggests that the plaintiff and her financial advisor did not rely on the defendant's financial statement, when read in context, the finding means only that they did not rely exclusively on the financial statement.

The April 1986 financial statement was prepared for the defendant in contemplation of the divorce proceedings and was the only financial statement supplied to the plaintiff's financial advisor even though other financial statements were prepared for borrowing purposes during the period of negotiating the property settlement. Significantly, the December 1986 financial statement, signed by the defendant in March 1987, showed a marked increase in the value of his assets. All of the defendant's disclosure of financial information occurred before the plaintiff was represented by counsel and while disclosure was being made voluntarily. Given the spirit of cooperation, no formal discovery did or would have occurred at that time. After the defendant's financial position was determined, the parties made proposals for property settlement, negotiated a memorandum of understanding, and eventually signed their permanent property settlement stipulation, all based on the financial information disclosed by the defendant. By that time, the plaintiff and the defendant were no longer living together, and the plaintiff did not have access to the defendant's financial information that she had in August.

There were obvious advantages of privacy, cost, and control, particularly for the defendant, in proceeding through agreement to an uncontested divorce. The defendant's attorney had warned the plaintiff at their first meeting that a litigated divorce would not be in her best interest. The plaintiff rejected the option of filing for divorce on fault grounds, which would have required a fully litigated divorce. During the January 6, 1987, negotiating session, the defendant's attorney told the plaintiff's attorney that if the plaintiff did not accept the proposed property settlement, distribution of their property would have to be litigated. The marital master concluded, however, that the parties were engaged in an adversarial divorce process by the time the plaintiff hired her own attorney and, therefore, each was obligated to look after his or her own best interests in the divorce process.

The State regulates domestic relations and has a strong interest in encouraging orderly and equitable conduct in the resolution of disputes attending divorce. *See* RSA chs. 457, 458. When the legislature considered amending divorce law to allow "no-fault" divorce, Senator Nixon spoke in favor of the bill stating that by eliminating the necessity for proof of fault, "[t]he emphasis [in] the proceedings would be on what is best for the parties and society and the children involved." N.H.S. JOUR. 972 (1971). The unique circumstances involved in ending a marriage on "no-fault" grounds and equitably dividing their property by agreement enhance the parties' obligation to deal with each other fairly and truthfully.

The plaintiff's attorney for the divorce proceedings agreed at the hearing on the plaintiff's motion to modify the property settlement that the defendant's refusal to acknowledge that he had been "forthright . . . regarding the current status and value of [his] assets" or to otherwise warrant the reliability of his financial representations was a "red flag." She explained, however, that she proceeded with the stipulated property settlement because the plaintiff did not want to do discovery, and she had no suspicions of wrongdoing by the defendant. If the plaintiff's attorney understood the defendant's refusal to be a "red flag" at that time, we are at a loss to understand why she allowed the plaintiff to agree to waive the Superior Court Rule 158 financial affidavit requirement. Instead, it seems that the plaintiff and her counsel believed that the information provided by the defendant and forming the basis for the property settlement agreement was current and accurate.

In equity, we will not allow the defendant to perpetrate a fraud based on an eleventh hour change of negotiating posture from

cooperation to combat. Because the defendant failed to provide the plaintiff with updated financial statements in violation of his duty to do so, he allowed her to rely on information which he knew was dated and false when she signed the permanent stipulation for property distribution. Therefore, we conclude that the defendant fraudulently induced the plaintiff to sign the property settlement and that the plaintiff, under these circumstances, did not have a duty to conduct discovery or further investigate the defendant's representations. *See Billington v. Billington*, 220 Conn. 212, 217–22, 595 A.2d 1377, 1379–81 (1991).

Our recent decision in *Labbe v. Labbe*, 137 N.H. 53, 623 A.2d 1320 (1993), concerning disclosure of the value of a pension for purposes of property distribution, does not require a different conclusion. In *Labbe*, the divorce was contested, evidence was heard by a marital master, and most importantly, the defendant complied with all applicable obligations to provide information about his pension. Thus, in *Labbe* the plaintiff failed to show fraud by the defendant in not providing further information about his pension. In the particular circumstances of this case, however, the defendant did not fulfill his obligation to provide necessary financial information.

If the parties in this case had been required to comply with Superior Court Rule 158, the defendant would not have been able to perpetrate his fraud without making a false statement under oath. Therefore, to avoid a repetition of these circumstances, for the future, we hold that the full disclosure provisions of Superior Court Rule 158 are mandatory and may not be waived by parties or the court.

In his cross-appeal, the defendant argues that the denial of his motions to dismiss should be reversed. We need discuss only the defendant's second motion to dismiss, which argued that the plaintiff was barred from challenging the validity of the stipulation because she had elected to receive benefits under it. The marital master decided that the defendant's argument for election of remedies was without merit and denied his motion. When considering an appeal of a motion to dismiss, we accept the factual allegations of the challenged pleading as true, and we take all reasonable inferences therefrom in favor of the non-moving party. *Murdock v. City of Keene*, 137 N.H. 70, 73, 623 A.2d 755, 757 (1993). It is undisputed that the plaintiff received substantial benefits as provided by the terms of the property settlement. The defendant relies on the general rule requiring a party seeking equitable relief from a judgment to return

any benefits received under the judgment. *See Bechard v. Amey*, 82 N.H. 462, 471, 136 A. 370, 373 (1926); *Watkins v. Railroad*, 80 N.H. 468, 478–79, 119 A. 206, 212 (1922). The plaintiff acknowledges the general rule but points to an exception that does not require relinquishment of benefits if it is undisputed that the appealing party is entitled to at least the amount of property or benefits received. *See Connelly v. Connelly*, 374 N.W.2d 633, 634 (S.D. 1985). We hold that parties to a divorce are not required to relinquish benefits derived from a property settlement in order to petition to set aside a divorce decree on grounds of fraud, particularly where, as here, the petitioner is probably entitled to more than she has received. *See Simon v. Simon*, 148 N.J. Super. 40, 42, 371 A.2d 818, 819–20, *cert. denied*, 75 N.J. 12, 379 A.2d 243 (1977); *Kidd v. Kidd*, 584 S.W.2d 552, 554–55 (Tex. Civ. App. 1979).

We have considered the defendant's remaining arguments, and conclude that they are without merit. *See Vogel v. Vogel*, 137 N.H. 321, 322, 627 A.2d 595, 596 (1993). Because, under the circumstances of this case, the defendant's eleventh hour refusal to warrant the reliability of his financial information did not relieve him of his obligation to the plaintiff to provide reliable information, he fraudulently misled the plaintiff by allowing her to rely on erroneous information when she signed their permanent stipulation. Therefore, the trial court erred as a matter of law in not finding that the defendant's actions constituted fraud. The trial court's order denying the plaintiff's petition to bring forward and modify the property distribution in the divorce decree is vacated. We affirm the denial of the defendant's motions to dismiss. The case is remanded to the trial court for further proceedings.

*Affirmed in part; order vacated; remanded.*

THAYER, J., with whom HORTON, J., joined, dissented; the others concurred.

THAYER, J., dissenting: The majority correctly recognizes the long-standing common law principle that marital property settlements are not generally retained under the jurisdiction of the court and may only be set aside or modified upon a showing of fraud, undue influence, deceit, misrepresentation, or mutual mistake. *See Leary v. Leary*, 137 N.H. 161, 165, 623 A.2d 1346, 1348 (1993); *Labbe v. Labbe*, 137 N.H. 53, 55, 623 A.2d 1320, 1321 (1993). The majority's opinion, in my view, fails to follow the principle it cites as controlling. Accordingly, I must dissent.

The plaintiff makes no claim on appeal that any assets were hidden from her. She was encouraged at the beginning of the process to hire an accountant to value the assets. Her attorney was later specifically told by the defendant's attorney that she should not rely on the defendant's assessment of his net worth, but should conduct her own valuation of the assets for property settlement purposes. The plaintiff was a businesswoman, well enough informed as to the defendant's assets to be able to provide a list of properties to her accountant that included properties not found on the defendant's initial financial statement. The marital master concluded that the plaintiff's claim of being misled was illfounded because the plaintiff was represented by counsel and had been warned that she could not rely on the valuations of the property as supplied in the year-old financial statement, but instead should make her own determinations of the value of the properties held. The master quoted testimony of the plaintiff's original attorney at the nine-day hearing that amply supports this finding:

> "Question: Now the end of the second page of Alan Reisch's letter in response to your request regarding Article 14, he says he has not included or would you read what he said about it?
>
> Answer from Attorney Noyes: He says 'I have not included your suggested last sentence. We have provided you and Bill with all the financial data you had requested and I feel it is your responsibility to determine what the values are for property settlement purposes.[']
>
> Question: Now did you take that as a red flag?
>
> Answer: Yes.
>
> Question: What did you do about it?
>
> Answer: I discussed it with Mrs. Shafmaster.
>
> Question: And what did you tell her and what did she say to you?
>
> Answer: I asked her how she felt about that, I asked her if she had any idea of anything that was going on, I would imagine, I mean, this is a general
>
> Question: Well, the best you can recall.
>
> Answer: And I suggested again that you know we could get out interrogatories, we could do discovery if it was necessary.

Question: And what was her response?

Answer: She didn't want to do discovery."

Despite these facts that belie any reasonable reliance by the plaintiff on the defendant's year-old opinion as to his net worth, the majority accepts her argument that the defendant's failure to provide a re-valuation of the assets amounted to fraud. In so doing the majority abrogates the common law rule set forth in *Labbe v. Labbe*, 137 N.H. 53, 623 A.2d 1320, in which the plaintiff similarly was aware of the existence of the asset, but failed to make any attempt to assess its value. We held that the defendant's conduct in disclosing the exist-ence of the asset but not its value did not amount to fraud such that the property settlement would be overturned. *Id.* at 56, 623 A.2d at 1322. Where, as here, a party does not undertake discovery and un-reasonably relies on a year-old opinion of the other party, no reason exists to set aside the property settlement.

Superior Court Rule 158, however, does address the issue of asset valuation by requiring parties to marital property settlements to dis-close their assets *and* their fair market value. Had the defendant misrepresented the values on such a form, the plaintiff would have reason to complain and possibly a valid ground upon which to attack the property settlement. The plaintiff, however, did not object to the master's waiver of the requirement of this form and therefore would have no reviewable basis for relief on this ground. Despite the fact that compliance with Rule 158 could have avoided the situation in this case, I disagree with the majority's prospective command that Rule 158 can never be waived. There may be valid reasons for a mari-tal master, in the exercise of sound discretion, to waive the require-ment for a Rule 158 filing, such as a situation where one spouse refuses to cooperate or cannot be located. While I believe that gener-ally it may be advantageous for a party to a property settlement to require the filing of a Rule 158 form before agreeing to make the settlement final, I believe that a *per se* rule imposed by the court to require such a filing in every case is likely to lead to more problems than it solves. I would affirm.

HORTON, J., joins in the dissent.