[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM FILED JUNE 14, 1996
This is a motion to open a judgment of dissolution of marriage between the parties.
Many of the facts that give rise to this motion are not in dispute.
On January 26, 1993, the marriage of the parties was dissolved by the Superior Court at Concord. New Hampshire.
The defendant filed a petition for filing a foreign matrimonial judgment with the Superior Court for the Judicial District of Litchfield on December 5, 1994.
On December 27, 1994, by motion file-stamped December 30, CT Page 4914 1994, the defendant moved to open the New Hampshire judgment on the grounds of fraud.
In determining whether the New Hampshire judgment should be vacated or set aside on the grounds of fraud, this court is applying the substantive law of New Hampshire as required by § 46b-71(b), and Colby v. Colby, 33 Conn. App. 417, 420-21
(1994).
This court is applying the standard of clear and convincing evidence in determining the facts to be found. The court finds that both parties were represented by counsel and filed an appearance in the New Hampshire court at the time the New Hampshire judgment was entered.
Briefs were filed by both parties, as requested by this court. Each party has cited Shafmaster v. Shafmaster, 138 N.H. 460,642 A.2d 1361 (1994). The Shafmaster court stated at pages 464, 467, in part, as follows:
 Property distributions or stipulations decreed by a court are not retained under the continuing jurisdiction of the court and will not be modified unless the complaining party shows that the distribution is invalid due to fraud, undue influence, deceit. misrepresentation, or mutual mistake. Leary v. Leary, 137 N.H. 161, 165, 623 A.2d 1346, 1348
(1993). Having alleged fraud, "the plaintiff must prove that the defendant made a fraudulent representation for the purpose or with the intention of causing the plaintiff to act upon it." Proctor v. Bank of N.H., 123 N.H. 395, 399, 464 A.2d 263, 265
(1983). Each party to an agreement covenants by implication that he or she "will deal in good faith and deal fairly with the other." Bursey v. Clement, 118 N.H. 412, 414, 387 A.2d 346, 347 (1978) (quotation omitted). "One who makes a representation that is true when made is under a duty to correct the statement if it becomes erroneous or is discovered to have been false before the transaction is consummated." Id., 387 A.2d at 348; Bergeron v. Dupont, 116 N.H. 373, 374, 359 A.2d 627, 628
(1976); see also Centronics Corp. v. Genicom Corp., 132 N.H. 133, 139, 562 A.2d 187, 190-91 (1989). In contract negotiations, "equity imposes a duty to CT Page 4915 speak when one knows or ought to know that his silence is misleading and will induce another to act upon it to his damage." Decatur v. Cooper, 85 N.H. 250, 257, 157 A. 706, 710 (1931) . . .
 We agree with the marital master that once financial information was requested and provided, the defendant had an ongoing obligation to provide current and accurate financial information.
The Bergeron decision cited with approval by the Shaftmaster
[Shafmaster] court held that a representation which was true when made could be fraudulent if the maker failed to disclose subsequent information which made the original representation false. Further, the Centronics Corporation decision cited with approval by the Shaftmaster [Shafmaster] court held, in part, as follows:
 In our decisions setting standards of conduct in contract formation, the implied good faith obligations of a contracting party are tantamount to the traditional duties of care to refrain from misrepresentation and to correct subsequently discovered error, in so far as any misrepresentation is intended to induce, and is material to, another party's decision to enter into a contract in justifiable reliance upon it.
This court finds the following additional facts by clear and convincing evidence. The parties were married in July 19, 1969 in Lynnefield, Massachusetts.
As of the date of the divorce in New Hampshire, they had been married for twenty-three years. The separation agreement entered into between the parties provided, in part, in paragraph 10, as follows:
 The plaintiff shall pay the defendant alimony in the amount of $2000 per month for two years, commencing as of January 1, 1993 through December 31, 1994, and in the amount of $1200 per month for three years commencing on January 1, 1995 through December 31, 1997, at which time the plaintiffs alimony obligation to the defendant shall terminate. Plaintiffs alimony obligation shall also terminate upon the death or remarriage of the CT Page 4916 defendant. Said alimony payments shall be made on the first day of each month in advance. For the month of January, 1993, the plaintiff shall be credited with any alimony payment for that month paid pursuant to the temporary orders.
The parties separated on November 12, 1990. At the time of dissolution, the plaintiff was fifty years old and the defendant was forty-six years old. The parties had two adult children, ages twenty-two and twenty-one at the time of dissolution. The plaintiffs financial affidavit, dated January 8, 1993, showed his occupation as being sales/management and that he was employed by Steag Industries, Inc. with an average monthly gross income of $6,666 and a net monthly income of $4,680.
The plaintiff filed a financial affidavit with the New Hampshire court, dated July 10, 1992, in which he showed his occupation as being sales manager and was employed by Steag with an average monthly and gross income of $6,154.
The defendant filed a second set of interrogatories and request for production of documents in which the answers were sworn to by the plaintiff on June 24, 1992. Interrogatory 32 sought information from the defendant regarding anticipated commissions. Other than for commission from a prior employment, the plaintiff responded by stating: "No further commissions anticipated."
The plaintiff commenced employment with Steag in June or early July, 1992. He entered into an employment contract with Steag on June 30, 1992. The employment contract was entered into ten days before he filed his financial affidavit with the New Hampshire court dated July 10, 1992. Under the terms of his employment contract, his salary for the first commission with a $20,000 guarantee minimum commission. His financial affidavit, dated January 8, 1993, that showed a gross monthly commission of $6,666 was based on the $20,000 base annual salary. That financial affidavit did not reveal that he had a guaranteed $20,000 minimum commission over and above the $80,000 salary, the prorata share of which commission was paid to him during the last week in December, 1992. The plaintiff knew when he filed his financial affidavit with the New Hampshire court on January 8, 1993, that in addition to his average gross monthly income of $6,666, that he had an annual guaranteed minimum commission of $20,000, which commission was not revealed on his financial CT Page 4917 affidavit dated January 8, 1993. In addition, the plaintiff failed, prior to January 8, 1993, to update his disclosure answer, dated June 24, 1992, to reflect the fact that he had a guaranteed minimum $20,000 annual commission. The court finds that the plaintiff made a fraudulent representation as to his income for the purpose of and with the intention of causing the defendant to act upon it, and that the defendant in fact did act upon the fraudulent representation. The plaintiffs misrepresentation was intended to induce and was material to the defendant's decision to enter into the stipulation that she entered into in justifiable reliance upon the plaintiffs representation of income. The misrepresentation by the plaintiff of his income was intended to induce and was material to the defendant's decision to enter into the separation agreement between the parties. The court, therefore, concludes that the defendant has met her burden of proving by clear and convincing evidence fraud on behalf of the plaintiff. In the event the plaintiff's true income had been disclosed accurately at the time of the entry of the stipulation for judgment, their is a substantial likelihood that the terms of the stipulation would have been different. There has been no laches or unreasonable delay on the part of the defendant since the discovery of the plaintiffs inaccurate financial information.
As part of the commencement of the proceeding by the defendant to open the judgment of divorce, the plaintiff was personally served by a sheriff regarding the defendant's motion to open the judgment. The plaintiff has since left the State of Connecticut and now resides in the State of New York. Therefore, the court is now faced with an action between a New Hampshire resident and a New York resident.
ORDERS
1. All of the financial orders entered in the State of New Hampshire in the judgment of January 26, 1993, in accordance with the stipulation between the parties are set aside and vacated. The dissolution of marriage entered between the parties remains in full force and effect.
2. The court, sua sponte, is entering an order temporarily staying all further proceedings in Connecticut, in so far as a new hearing to determine financial orders, pending a determination by the New Hampshire court as to whether it has continuing jurisdiction to enter new financial orders. In the CT Page 4918 event the New Hampshire court finds that it does not have such jurisdiction, then this stay will be automatically vacated. In the event the New Hampshire court finds that it has jurisdiction, then this stay will remain in effect until such time as the New Hampshire renders a new decision on the underlying financial issues. This court is not making any finding as to whether it has continuing jurisdiction over the plaintiff to enter new financial orders in view of the fact that he is no longer a Connecticut resident.
AXELROD, J.