# THE STATE OF NEW HAMPSHIRE

# SUPREME COURT

**In Case No. 2021-0282, <u>In the Matter of Mary Braun and Terry Braun</u>, the court on August 11, 2022, issued the following order:**

The respondent's motion to expand the record is denied for the reasons stated in the petitioner's objection, and because the evidence he seeks to admit was not presented to the trial court. <u>See</u> <u>Sup. Ct. R.</u> 13; <u>Lake v. Sullivan</u>, 145 N.H. 713, 717 (2001) ("On appeal, we consider only evidence and documents presented to the trial court.").

Having considered the briefs and record submitted on appeal, we conclude that oral argument is unnecessary in this case. <u>See</u> <u>Sup. Ct. R.</u> 18(1). The respondent, Terry Braun, appeals an order of the Circuit Court (<u>LeFrancois</u>, J.), following a hearing, denying his petition to modify the property distribution and alimony award set forth in the parties' 2015 mediated final divorce decree. He argues primarily that the trial court erred by denying his petition because the petitioner filed a fraudulent financial affidavit undervaluing her retirement accounts, and failed to correct that information. We affirm.

We review the trial court's order on the petition to modify the final property distribution and alimony award for an unsustainable exercise of discretion. <u>See</u> <u>In the Matter of Arvenitis & Arvenitis</u>, 152 N.H. 653, 654 (2005); <u>In the Matter of Birmingham & Birmingham</u>, 154 N.H. 51, 57 (2006). We will affirm the findings and rulings of the trial court unless they are unsupported by the evidence or are legally erroneous. <u>See</u> <u>Shafmaster v. Shafmaster</u>, 138 N.H. 460, 464 (1994). "Property distributions or stipulations decreed by a court are not retained under the continuing jurisdiction of the court and will not be modified unless the complaining party shows that the distribution is invalid due to fraud, undue influence, deceit, misrepresentation, or mutual mistake." <u>Id</u>. "To obtain an order modifying a support obligation, a party must show that a substantial change in circumstances has arisen since the initial award, making the current support amount either improper or unfair." <u>Laflamme v. Laflamme</u>, 144 N.H. 524, 527 (1999) (quotation omitted). "Changes to a party's condition that are both anticipated and foreseeable at the time of the decree cannot rise to the level of a substantial change in circumstances sufficient to warrant modification of an alimony award." <u>Id</u>. at 528-29.

In this case, the parties signed a mediated final divorce decree on May 1, 2015. On the same day, the petitioner submitted a financial affidavit, in which she represented that one of her assets was a 401(k) retirement account valued at

$157,000 — the same value as that set forth in her prior financial affidavit, submitted on January 28, 2015.  As part of the distribution of marital property set forth in the final decree, the respondent was awarded $55,000 of the petitioner's retirement account.  He was also awarded alimony in the amount of $700 per month for a period of approximately four years.

In March 2020, the respondent petitioned the trial court to modify the property distribution and alimony award.  In May 2021, following a hearing, the trial court denied the respondent's petition.  In its order, the trial court agreed with the respondent that, as of May 1, 2015, when the petitioner signed her financial affidavit, the credible evidence established that the petitioner actually had two retirement accounts — a 401(a) and a 403(b); not a 401(k) — and that the value of those accounts totaled approximately $180,000, not $157,000.  Nonetheless, the trial court found that the respondent had failed to demonstrate that the petitioner had <u>intentionally</u> deceived him — a necessary showing for the trial court to modify the property distribution on the basis of fraud, <u>see</u> <u>Shafmaster</u>, 138 N.H. at 464 ("Having alleged fraud, the plaintiff must prove that the defendant made a fraudulent representation for the purpose or with the intention of causing the plaintiff to act upon it." (quotation omitted)).  The trial court explained that, rather than being fraudulent, the petitioner's May 1, 2015 financial affidavit was inaccurate as a result of her confusion as to the type of account(s) she held, and her "fail[ure] to update the amount when she signed the . . . affidavit, which was based on a previously filed financial affidavit [that] had used the September 2014 retirement account value."  The court noted that the record contained an account statement for the period ending September 2014, which listed the value as $157,308.43.

Additionally, the trial court found that there was evidence of substantial communication between counsel for the parties, as well as the attorney who was retained to prepare the qualified domestic relations order (QDRO), regarding the type and value of the petitioner's retirement accounts.  Accordingly, the trial court concluded:

> The evidence does not establish that [the petitioner] deceived [the respondent] about the value of her retirement account or that [the respondent] solely relied on the value listed on the May 1, 2015 financial affidavit as the basis for agreeing to the property settlement.  As early as January 2015, [the petitioner] provided a value of the retirement account of $182,459.89.[1]  The evidence established that the confusion about the retirement account was clarified before the execution of the [QDRO].  Both parties and their

---

1 Here, the trial court is referring to a document provided by the petitioner as part of her initial disclosures under Family Division Rule 1.25-A.  The respondent argues that the document was simply a transaction history, and does not support a finding that the value of the retirement account(s) was $182,459.89.  We will address this argument later in the order.

respective counsel reviewed and signed the proposed [QDRO] which was approved by the court in February 2016.

Looking at the totality of the evidence, [the respondent] failed to prove fraud and his petition to reopen the property distribution of the final decree is denied.

Having found that the petitioner did not commit fraud, and finding no other unanticipated or unforeseeable substantial change in circumstances, the trial court also denied the respondent's request to modify the alimony award. See Laflamme, 144 N.H. at 527-29.

We first consider the respondent's arguments that the trial court's findings are contrary to RSA 458:15-b, I (2018) — which he contends required him to trust and rely on the value stated in the petitioner's financial affidavit — and Shafmaster — which he contends required the trial court to find that the petitioner intentionally deceived him by allowing him to rely on financial information which she knew was outdated and false. We are not persuaded.

Contrary to the respondent's argument, Paragraph I of RSA 458:15-b does not require him to trust and rely on the petitioner's financial affidavit. Rather, that provision — which provides, in pertinent part, that "[t]he financial affidavits shall be accepted as prima facie evidence of the facts reflected therein unless challenged by a party" — clearly contemplates, by its plain language, that a party may challenge the accuracy of the other party's financial affidavit. See RSA 458:15-b, I. In any event, the evidence demonstrates that the respondent did not, in fact, trust the value stated in the petitioner's affidavit because he himself submitted two financial affidavits, in January 2015 and May 2015, asserting that her retirement account was worth $170,000 to $180,000, not $157,000 as she had disclosed.

With respect to Shafmaster, the respondent is correct that, in that case, we held that the defendant, the husband, had fraudulently induced the plaintiff, his wife, to sign a permanent stipulation for property distribution, because he had "failed to provide the plaintiff with updated financial statements in violation of his duty to do so," thereby allowing her to rely on information "which he knew was dated and false" when she signed the agreement. Shafmaster, 138 N.H. at 467. However, key to our decision in that case was the considerable evidence of the defendant's intentional deception, and his "eleventh hour change of negotiating posture from cooperation to combat." Id. at 463, 465-67, 468 (noting the defendant's intentional withholding of his newest financial statement — showing a significant increase in the value of his assets — and his "eleventh hour refusal to warrant the reliability of his financial information").

Unlike in Shafmaster, here, as the trial court found, the evidence in the record does not establish that the petitioner intentionally misled the respondent

about the value of her retirement accounts. Cf. Walker v. Percy, 142 N.H. 345, 351-52 (1997) (deferring to trial court's factual finding that evidence failed to establish an intent to deceive). Rather, the evidence demonstrates that, in August 2015, once the petitioner and her counsel became aware of the mistake — after being alerted to it by the attorney who had been retained to prepare the QDRO — petitioner's counsel quickly notified respondent's counsel, clarifying that the petitioner actually had two retirement accounts, a 401(a) and a 403(b), but not a 401(k) as had previously been disclosed. The petitioner's counsel "apologize[d] for [the] oversight," and stated that the petitioner would obtain statements for both accounts so that they could "straighten this out as soon as possible." In September 2015, prior to the execution of the QDRO, petitioner's counsel emailed respondent's counsel, attaching two letters from T. Rowe Price setting forth the value of both accounts as of September 1, 2014, and June 1, 2015, and stating: "Please see attached communications from T. Rowe Price regarding the balances in [the petitioner's] retirement accounts. We used the account balances from September 2014 for settlement purposes at mediation."

Next, the respondent argues that petitioner's counsel did not, in fact, attach both letters from T. Rowe Price to her email. Rather, he contends, emphasizing the petitioner's failure to respond to his first requests for admission on this point, that petitioner's counsel provided only the letter regarding the 401(a) account, but intentionally withheld the letter regarding the 403(b) account. Therefore, he argues, there was sufficient evidence for the trial court to conclude, contrary to its finding, that the confusion about the type and value of the retirement accounts had not been clarified prior to the execution of the QDRO.

As an initial matter, the respondent misstates our standard of review, which is not whether there was evidence sufficient to find in his favor, but "whether a reasonable person could have reached the same decision as the trial court based upon the same evidence." In the Matter of Braunstein & Braunstein, 173 N.H. 38, 47 (2020) (quotation omitted); see also Shafmaster, 138 N.H. at 464. Here, as explained above, there was sufficient evidence in the record to support the trial court's finding that "the confusion about the retirement account was clarified before the execution of the [QDRO]." The petitioner's initial failure to respond to the respondent's first requests for admission is not to the contrary, as the trial court subsequently granted the petitioner's motion to allow late entry of her responses. In any event, the trial court, as the trier of fact, "is in the best position to assess and weigh the evidence before it," Abrams v. Abrams, 131 N.H. 522, 525 (1989), and may "accept or reject, in whole or in part, whatever evidence was presented," In the Matter of Costa & Costa, 156 N.H. 323, 332 (2007) (quotation omitted).

Nonetheless, even assuming, without deciding, that the T. Rowe Price letter regarding the 403(b) account was not attached to the email, that fact does not establish fraudulent intent. Given that petitioner's counsel had previously

4

disclosed that the petitioner had two different retirement accounts, the pluralized references in counsel's email to the "attached communications from T. Rowe Price" regarding the "balances" in the "retirement accounts" clearly suggest that, even if one of the letters was omitted, such an omission was not intentional, and, therefore, not fraudulent. Moreover, given that the respondent was on notice that the petitioner had two retirement accounts, it was incumbent upon him to raise the purported failure to disclose the second letter at that time — before signing the QDRO. Such mistakes do not amount to fraud.

Similarly, the respondent also argues that the petitioner failed to comply with Family Division Rule 1.25-A when, as part of her initial disclosures in January 2015, she provided him with a document that was simply a transaction history for an unspecified account, and which did not contain account balance information. Accordingly, he contends that the trial court erred by finding that the petitioner had informed him, by January 2015, that the value of the retirement account(s) was $182,459.89.

Even assuming, without deciding, that the document is not compliant with Rule 1.25-A, and that the trial court erred by finding that the document had informed the respondent of the value of the petitioner's account(s), the trial court nonetheless correctly determined that this evidence did not establish fraudulent intent. Indeed, using this document to mislead the respondent about the value of the account(s) would have been illogical, as it would have suggested a <u>higher</u> value than that shown on the petitioner's financial affidavit. Accordingly, rather than serving to mislead the respondent, this document would have put him on notice that the petitioner's financial affidavit may have been incorrect. In any event, this document was produced in the early stages of the parties' divorce proceeding, and any concerns about its accuracy or its compliance with Rule 1.25-A should have been raised at that time. <u>See</u> <u>Birmingham</u>, 154 N.H. at 57 (observing, in case involving a petition to modify a final distribution of marital property, that purported legal errors "should have been raised on appeal, and . . . did not meet the respondent's burden of showing fraud, undue influence, deceit, misrepresentation, or mutual mistake").

Here, the question before us is not whether the parties perfectly complied with their obligations, but whether the trial court erred by denying the respondent's petition to modify the final divorce decree because he had failed to prove fraud. <u>See</u> <u>id.</u>; <u>Shafmaster</u>, 138 N.H. at 464. Based upon our review of the record, we conclude that the evidence supports the trial court's finding that the petitioner did not intentionally deceive the respondent, and, therefore, the trial court did not err by denying the respondent's petition to modify the decree on the basis of fraud. <u>Cf</u>. <u>Sheris v. Thompson</u>, 111 N.H. 328, 331-32 (1971) (observing that "fraud will never be presumed," that it must be established by clear and convincing evidence, and that it "will not be implied from doubtful circumstances").

5

Lastly, the respondent argues that we should reverse the trial court's decision because Judge LeFrancois was biased. However, the respondent's allegations of bias are based solely upon Judge LeFrancois' allegedly erroneous rulings against him, and it is well-established that adverse rulings alone do not render a judge biased. See, e.g., State v. Bader, 148 N.H. 265, 271 (2002); In the Matter of Tapply & Zukatis, 162 N.H. 285, 297 (2011). Furthermore, based upon our review of the record, we cannot conclude either that a reasonable person would have questioned Judge LeFrancois' impartiality, or that any factors that would have per se disqualified him were present. See Bader, 148 N.H. at 268-71.

Affirmed.

MacDonald, C.J., and Hicks, Bassett, Hantz Marconi, and Donovan, JJ., concurred.

**Timothy A. Gudas,
Clerk**