Rockingham
No. 94-560

PHILIP J. WEEKS & a.

v.

ST. PAUL FIRE & MARINE INSURANCE COMPANY

February 7, 1996

*Hall, Morse, Anderson, & Miller, P.C.*, of Concord, for plaintiff Philip J. Weeks, adopted the brief of plaintiff Joyce Weeks.

*Casassa & Ryan*, of Hampton (*Robert A. Casassa* on the brief and orally), for plaintiff Joyce Weeks.

*Wadleigh, Starr, Peters, Dunn & Chiesa*, of Manchester (*Donald J. Perrault* and *Christine Desmarais-Gordon* on the brief, and *Ms. Desmarais-Gordon* orally), for plaintiff Nelson Ward.

*Orr & Reno, P.A.*, of Concord (*Lisa Snow Wade* and *Laura E. Tobin* on the brief, and *Ms. Wade* orally), for plaintiff Marjorie Dixon.

*Taylor, Keane & Blanchard*, of Portsmouth, for plaintiffs W. Peter Torrey and Joan Young, filed no brief.

*Devine, Millimet & Branch, P.A.*, of Manchester (*Andrew D. Dunn* on the brief and orally), for the defendant.

JOHNSON, J. The defendant, St. Paul Fire & Marine Insurance Company (St. Paul), appeals a Superior Court (*McHugh*, J.) order finding coverage for six former trustees (the trustees) of the Home for Aged Women (the Home) under two separate insurance policies issued by St. Paul to the Home for damages resulting from the trustees' mismanagement of the Home's assets. We affirm in part and reverse in part.

The Home is a New Hampshire charitable corporation organized in 1877 to provide lifetime nursing care, room, and board to elderly women in Portsmouth. The plaintiffs were all trustees of the Home

at various times between 1974 and 1989. The Home also held and managed investments for its residents, which were used to fund the Home's operations and from which the residents received periodic dividends. The Home ceased to exist in 1990 due to lack of funds resulting from mismanagement of the Home's assets. After the Home closed, a former resident, Hazel Bunnell, sued the Home alleging breach of contract and breach of fiduciary duty (the Bunnell suit). In response, the Home filed a third party action against plaintiffs Philip Weeks, Joyce Weeks, Nelson Ward, and Marjorie Dixon seeking indemnification for the Bunnell suit (Home Count I) and damages resulting from mismanagement of assets (Home Count II). The attorney general, acting as director of charitable organizations, subsequently petitioned the court, seeking civil penalties and surcharges against all six trustees (the attorney general's suit) and alleging breach of their fiduciary duty of care in managing the Home's assets and violation of State reporting statutes.

This appeal arises from consolidated declaratory judgment actions initiated by the trustees seeking coverage and defense from St. Paul for the claims brought against them. The parties filed cross-motions for summary judgment, and the Superior Court (*McHugh*, J.) ruled for the trustees, finding that the claims against them were covered by either the "Health Care Facility Commercial General Liability Protection" policy (CGL) or the "Health Care Facility Professional Liability Protection" policy (PLP) issued by St. Paul to the Home. Only those claims against Philip J. Weeks that arose from acts of intentional theft, *see State v. Weeks*, 137 N.H. 687, 635 A.2d 439 (1993), were found not to be covered by either the PLP or CGL.

St. Paul does not dispute that the trustees are insured under the policies as "protected persons," and that if coverage is found, it has a duty to defend and indemnify. Rather, St. Paul contends that the underlying claims against the trustees by the Home and the attorney general are not covered under the policy language of either the CGL or PLP.

"The interpretation of insurance policy language is ultimately a question of law for this court to decide." *Allen v. Sentry Insurance*, 137 N.H. 579, 580, 630 A.2d 780, 781 (1993). An "insurance company remains free to limit its liability through clear and unambiguous policy language," *A.B.C. Builders v. American Mut. Ins. Co.*, 139 N.H. 745, 748, 661 A.2d 1187, 1190 (1995) (quotation omitted); "the burden of establishing non-coverage is upon the insurer, and . . . any ambiguities in the language of the policy will be construed in favor of the insured and against the insurer." *Robbins Auto Parts*,

*Inc. v. Granite State Ins. Co.*, 121 N.H. 760, 762, 435 A.2d 507, 509 (1981) (quotation and citations omitted); *see also* RSA 491:22-a (1983).

## I. *Professional Liability Policy (PLP)*

■■ St. Paul argues that the superior court erred in finding that the PLP provided coverage for Home Count II and the attorney general's suit, both of which seek compensation for mismanagement of the Home's assets. The PLP provides coverage "for injury or death resulting from . . . the providing or failure to provide professional services." The term "professional services" is not defined in the policy. St Paul argues that the PLP covers only professional health care malpractice and not damages arising from the mismanagement of the Home's assets. "Where disputed terms are not defined in the policy . . . , we construe them in context, and in the light of what a more than casual reading of the policy would reveal to an ordinarily intelligent insured." *Concord Hosp. v. N.H. Medical Malpractice Joint Underwriting Assoc.*, 137 N.H. 680, 682-83, 633 A.2d 1384, 1386 (1993) (citation and quotation omitted). We find that an objective review of the policy, *see id.* at 683, 633 A.2d at 1386, reveals that it may be fairly read to cover more than medical malpractice. The policy states that it was designed "to protect against a variety of liability claims." Further, the policy specifically excludes coverage for certain administrators when acting "as physicians in the direct treatment of patients" and does not cover employees who are "interns, externs, residents, dentists, osteopathic or medical doctors."

■■ In the alternative, St. Paul argues that the trustees were acting in an "administrative" as opposed to a "professional" capacity and as such were not covered by the PLP. When "determining the coverage of a professional liability insurance policy, . . . [the court] must examine the nature of the [tortious] act performed, rather than the title or professional character of the actor." *Niedzielski v. St. Paul Fire & Marine Ins. Co.*, 134 N.H. 141, 144, 589 A.2d 130, 131 (1991) (quotation omitted). The attorney general's suit and Home Count II both allege that the trustees breached a fiduciary duty to properly manage and invest, or supervise the management and investment of, the Home's assets. Therefore, we must determine whether making or participating in investment decisions as trustee of a charitable corporation is a "professional" activity. While a trustee, in making investment decisions, is held to the standard of a "prudent man" and not of a "prudent investment manager," *see* RSA 564-A:1, III (1974), a trustee has clearly defined fiduciary

duties and powers. *See* RSA 564-A:3 (1974). The tortious conduct alleged in the underlying suits involves the negligent performance of acts within a trustee's fiduciary capacity that are "predominantly mental or intellectual, rather than physical or manual," *Niedzielski,* 134 N.H. at 144, 589 A.2d at 131, and therefore are "professional" acts within the meaning of the policy.

■ Further, St. Paul implies that a "professional" function in this context means "making health care decisions," as opposed to the "administrative" function of "overseeing financial matters." Because the Home not only provided nursing home care but also managed and invested the assets of the residents, this distinction is not persuasive.

At the very least, a reasonable disagreement exists as to the meaning of the term "professional." "[W]e resolve the ambiguity in favor of the insured," *Coakley v. Maine Bonding & Cas. Co.,* 136 N.H. 402, 410, 618 A.2d 777, 781 (1992), and affirm the superior court's finding of coverage under the PLP.

*II. Commercial General Liability Policy (CGL)*

St. Paul disputes the trial court's finding that the CGL's "personal injury" provision covered the claims against the trustees in Home Count II and the attorney general's suit. The CGL covers bodily injury, property damage and personal injury arising from an "event" or "offense." The term "personal injury" includes injury caused by any act "that interferes with rights provided by an applicable Patients' Bill of Rights law." The "Patients' Bill of Rights" statute, RSA 151:19-:30 (1990 & Supp. 1995), defines the obligations of nursing home facilities to their patients, which include the obligation to manage a patient's financial affairs in conformance with the statute and State law. *See* RSA 151:21, VII (Supp. 1995); RSA 151:24 (1990).

■ St. Paul argues that the court improperly "bootstrap[ed]" the Bunnell claim against the trustees for mismanagement of funds to Home Count II and the attorney general's suit, ignoring "both the form and substance of the actions for which coverage is sought." We have held that as long as the facts pleaded in the cause of action against the insured fall within the express terms of the policy, coverage will be afforded. *See M. Mooney Corp. v. U.S. Fidelity & Guaranty Co.,* 136 N.H. 463, 469, 618 A.2d 793, 796 (1992). The trial court found coverage under the CGL because the Home and the attorney general alleged violations of the Patients' Bill of Rights. This reasoning, however, is appropriate only to coverage for the Bunnell suit and the Home's indemnification suit, both of which

involve claims by patients against the Home. The analysis cannot be extended to Home Count II and the attorney general's suit: they seek damages on behalf of the Home for its direct losses and therefore do not independently allege violations of a Patients' Bill of Rights statute intended to protect individuals from abuses by nursing care facilities. Moreover, the provision of the Patients' Bill of Rights statute forming the basis of the superior court's finding of coverage, RSA 151:21, VII, applies to mismanagement of individual patients' assets, not those of the Home. While some portion of the Home's assets consisted of patients' funds transferred to the Home, here the claims at issue involve recoupment of losses suffered by the organization, independent of the losses suffered by the patients. Therefore, we reverse the ruling of the superior court finding coverage for Home Count II and the attorney general's suit under the CGL.

### III. Civil Penalty Claims

Finally, the superior court ruled that both policies provide coverage for the civil penalties sought by the attorney general. St. Paul's argues that the civil penalties and the compensatory surcharges sought by the attorney general are penal in nature, and therefore are neither "damages" as defined by the CGL, nor funds necessary to "compensate others for injury or death" covered under the PLP. Even assuming, without deciding, that the claims are penal, we have held an insurance company liable for exemplary or punitive damages where fines and penalties are not expressly excluded by the policy language. *See American Home Assurance Co. v. Fish*, 122 N.H. 711, 715, 451 A.2d 358, 360 (1982). Because St. Paul points to no exclusionary language in the PLP, we affirm the ruling of the superior court finding coverage of the fines and penalties under the PLP. Because we hold that the attorney general's suit is not covered under the CGL, we need not decide this issue with respect to that policy.

*Affirmed in part; reversed in part.*

BRODERICK, J., did not sit; the others concurred.