Strafford
No. 96-118

SHAHEEN, CAPPIELLO, STEIN & GORDON, P.A. & a.

v.

THE HOME INSURANCE COMPANY

September 30, 1998

*Stein, Volinsky & Callaghan, P.A.*, of Concord (*Robert A. Stein* and *Linda Hoffman Dianis* on the brief, and *Mr. Stein* orally), for plaintiff Shaheen, Cappiello, Stein & Gordon, P.A.

*McKean, Mattson & Latici, P.A.*, of Gilford (*Steven M. Latici* on the brief and orally), for plaintiff Dorothy M. Bickford.

*Wadleigh, Starr, Peters, Dunn and Chiesa*, of Manchester (*Dean B. Eggert* on the brief and orally), and *Cetrulo & Capone*, of Boston, Massachusetts (*David Grossbaum* on the brief and orally), for defendant The Home Insurance Company.

HORTON, J. The defendant, The Home Insurance Company (Home Insurance), appeals a ruling of the Superior Court (*Mohl*, J.) granting a petition for declaratory judgment in favor of the plaintiffs, Shaheen, Cappiello, Stein & Gordon, P.A. (Shaheen P.A.) and Dorothy M. Bickford, seeking coverage under a lawyer's professional liability policy issued by the defendant. We affirm.

The trial court found the following facts. In 1984, the plaintiffs represented Deborah Coffin for the purpose of executing a prenuptial agreement between Coffin and her prospective husband, Jonathan Rearick. Bickford, an attorney with the Shaheen firm,

received a draft of a prenuptial agreement prepared by Coffin's Connecticut attorney that included a provision providing for the distribution of certain property to the spouse who contributed the funds to acquire it. Inexplicably, this provision was omitted from the final agreement.

After executing the agreement, Coffin and Rearick were married. They later purchased a home with Coffin's funds. The house was conveyed to Coffin and Rearick in joint tenancy. By September 1990, Coffin sought legal advice from Robert Stein of Shaheen P.A. for divorce proceedings, which commenced in December 1990. On April 18, 1991, Stein wrote a memorandum to Bickford, which opined that "the prenuptial agreement actually signed does not cover the dissolution of jointly-held property . . . ." Stein and Bickford exchanged memoranda regarding the omitted provision. Stein discussed with Coffin the possibility of successfully arguing that the agreement, even without the omitted provision, mandated that she was entitled to sole ownership of the marital home. Coffin expressed confidence in Stein and his legal abilities, and approved the firm's continuing representation in her divorce action.

On November 15, 1991, Shaheen P.A. applied for renewal coverage with Home Insurance. In response to the question, "is any lawyer aware of . . . any incident, act or omission which might reasonably be expected to be the basis of a claim or suit arising out of the performance of professional services for others," Shaheen P.A. did not disclose the Coffin matter because the firm believed that no claim would arise pending resolution of the interpretation of the prenuptial agreement.

On August 27, 1992, a hearing was held before the Marital Master (*Larry B. Pletcher*, Esq.) in the Sullivan County Superior Court. The master observed that the agreement was silent regarding the disposition of the marital home, and indicated he would likely dispose of it under equitable principles in accordance with RSA chapter 458. Stein informed Coffin that she would have a potential malpractice claim against Shaheen P.A. if the master ruled as suggested, and in a memorandum, requested that Bickford obtain a copy of Shaheen P.A.'s current malpractice policy to "determine whether we need to put our carrier on notice of a potential claim to be made." This was Bickford's only communication relative to the Coffin divorce since her exchange of memoranda with Stein in the spring of 1991.

On September 17, 1992, the marital master concluded that the prenuptial agreement did not cover the disposition of the

marital home. In October 1992, Stein informed Home Insurance about Coffin's potential malpractice claim, approximately eighteen months after Shaheen P.A. first learned of the potential problem. In November 1992, Home Insurance informed Shaheen P.A. that it would be reserving its rights, and, in March 1993, sent Shaheen P.A. a reservation of rights letter.

In late 1993, Home Insurance informed Shaheen P.A. that it was closing its file since no claim had been made and no suit had been filed. One representative of Home Insurance indicated that "there was nothing for [them] to do" until a claim was filed. In December 1993, Shaheen P.A. learned that a malpractice action would be brought against Bickford only, who had left Shaheen P.A. Bickford alleges that Shaheen P.A. purchased a "tail" policy to cover her acts prior to her departure. Home Insurance declined to appoint defense counsel for Shaheen P.A. because the firm was not named as a party.

In April 1994, Home Insurance first learned that a writ had been served against the plaintiffs alleging malpractice. In a letter sent on April 22, 1994, Home Insurance denied any obligation to provide professional malpractice coverage to the plaintiffs, claiming that the October 1992 notice was untimely. The plaintiffs then filed a declaratory judgment action in superior court. During the proceedings, the plaintiffs' expert witness, Andrew Dunn, Esq., testified as to when a reasonable attorney should expect an act or omission to give rise to a claim for coverage. The trial court relied on the expert's testimony and ruled in favor of the plaintiffs.

Although Home Insurance raises several issues on appeal, we need address only three: (1) whether the trial court erroneously admitted expert testimony regarding the reasonableness of the plaintiffs' actions; (2) whether the trial court erroneously ruled that the plaintiffs were not aware of an "act or omission which would reasonably be expected to be the basis of a claim or suit"; and (3) whether the policy was void because the plaintiffs failed to notify Home Insurance of the potential claim on the 1992 renewal application.

■ Home Insurance first challenges the admission of Attorney Dunn's expert testimony. The determination of an expert's qualification to testify rests within the sound discretion of the trial court. N.H. R. EV. 702; *Public Serv. Co. of N.H. v. Town of Seabrook*, 133 N.H. 365, 373, 580 A.2d 702, 707 (1990). We will not reverse such a decision unless we find that the trial court clearly abused its

discretion. *See Public Serv. Co. of N.H.*, 133 N.H. at 373-74, 580 A.2d at 707.

■ Since the standard of care by a reasonable attorney involves questions of "technical, or other specialized knowledge," an expert's testimony on the reasonability of an attorney's conduct is admissible. N.H. R. Ev. 702. Having found Attorney Dunn qualified as an expert, the trial court may properly rely on his testimony in determining the plaintiffs' reasonableness. *See* N.H. R. Ev. 702; *Rothbart v. Rothbart*, 141 N.H. 71, 77, 677 A.2d 151, 155 (1996). The trial court did not abuse its discretion by allowing Dunn to testify.

■ We next address Home Insurance's argument that the plaintiffs were aware of an act or omission which would reasonably be expected to be the basis of a claim or suit. We interpret insurance policies "in the same manner as any other contract." *Hudson v. Farm Family Mut. Ins. Co.*, 142 N.H. 144, 146, 697 A.2d 501, 503 (1997). "Interpretation of a contract, including whether a contract term or clause is ambiguous, is ultimately a question of law for this court to decide." *Merrimack School Dist. v. Nat'l School Bus Serv.*, 140 N.H. 9, 11, 661 A.2d 1197, 1198 (1995) (brackets and quotation omitted). We construe ambiguous policy language in favor of providing coverage to the insured. *See, e.g., Weeks v. St. Paul Fire & Marine Ins. Co.*, 140 N.H. 641, 643, 673 A.2d 772, 775 (1996).

The notice provision in Shaheen P.A.'s policy provides:
Condition VII. Notice of Claim or Suit:

Upon the Insured becoming aware of any act or omission which would *reasonably be expected to be the basis of a claim or suit covered hereby*, written notice shall be given by or on behalf of the insured to the Company or any of its authorized agents as soon as practicable, together with the fullest information obtainable. If claim is made or suit is brought against the Insured, the Insured shall immediately forward to the Company every demand, notice, summons or other process received by him or his representatives.

(Emphasis added.) The policy does not define the phrase "reasonably be expected," so we look to New Hampshire law and other authorities for guidance.

"Whether and what the insured should have reported concerning an act, omission or a claim can raise a question of what a 'reasonable attorney' would have done under similar circumstances." R. E. MALLEN & J. M. SMITH, LEGAL MALPRACTICE § 33.15, at 333 (4th ed. 1996). "When the facts of an occurrence are such that an insured

acting in good faith would not reasonably believe that liability will result, notice of the occurrence is given 'as soon as possible' if given promptly after the insured receives notice that a claim will in fact be made." *D'Aloia v. Travelers Ins. Co.*, 647 N.E.2d 1345, 1346 (N.Y. 1995) (citation omitted). Whether the insured acted reasonably in providing notice of a potential claim is a question of fact for the trial court. *See Sutton Mut. Ins. Co. v. Notre Dame Arena*, 108 N.H. 437, 440, 237 A.2d 676, 679 (1968). In considering when the obligation to report potential claims to a malpractice carrier arises, one commentator states:

> The test, however, is one of reasonableness: is it more likely than not that an incident will lead to a claim? Certain circumstances are clear-cut, as in the cases of blown statutes of limitations or the late filing of a Subchapter S election. Most cases are less clear-cut, however, and *require that the attorney exercise his professional judgment in evaluating the possibility that an adverse development will give rise to a claim.*

LEGAL MALPRACTICE: THE LAW OFFICE GUIDE TO PURCHASING LEGAL MALPRACTICE INSURANCE § 5.14, at 32 (R. E. Mallen ed., 2d ed. 1997) (emphasis added).

In New Hampshire, legal malpractice occurs when an attorney breaches a professional duty *and* damages occur as a result. *See Witte v. Desmarais*, 136 N.H. 178, 182, 614 A.2d 116, 117 (1992). "A cause of action . . . arises once all the necessary elements are present." *Conrad v. Hazen*, 140 N.H. 249, 252, 665 A.2d 372, 375 (1995). The trial court found that "only when [Stein's arguments] failed did damages emanating from Bickford's oversight become a real issue, for if Stein had prevailed on [his] argument[s], there would have been no reasonable likelihood of a claim." On October 8, 1992, approximately three weeks after the marital master's ruling, the plaintiffs reported Coffin's potential claim to Home Insurance.

Stein discussed the omission of the language in the prenuptial agreement with Coffin in May 1991 when the error was initially discovered. Coffin indicated that she still had confidence in Stein and Shaheen P.A., desired continued representation during her divorce, and had no desire to pursue a malpractice claim. At that time, New Hampshire law regarding prenuptial agreements was uncertain. As a result, Stein was uncertain if the agreement would be upheld, and if it were, if the distribution would be according to its terms. Stein also believed, based on his reading of the prenuptial

agreement in its entirety, that persuasive arguments could be made so that Coffin would acquire the marital home. Coffin also testified that she did not consider a malpractice action against Shaheen P.A. until after the marital master's ruling in August 1992. Coffin's malpractice attorney, Steven Latici, testified that Coffin did not contact him until late 1993 about a potential malpractice claim.

We conclude that the provision requiring the insureds to report any incidents which could "reasonably be expected" to form the basis of a claim or suit is ambiguous. The contract provides, in relevant part:

> A Claim is first made during the policy period . . . if: (a) during the policy period . . . the Insured shall have the knowledge or become aware of any act or omission *which could reasonably be expected* to give rise to a claim under this policy and shall during the policy period . . . give written notice thereof in accordance with Condition VII.
>
> . . . .
>
> (c) a claim shall be considered first made when the Company first receives notice of the claim or of an event *which could reasonably be expected* to give rise to a claim.

(Emphasis added.) As drafted, the provision does not indicate whether notice to the insurer is required when all elements of a malpractice claim are present, or when, based on the parties and the circumstances, a malpractice claim on the merits is likely. Therefore, we apply the latter view, interpreting it in favor of providing coverage to the insured. *See Weeks*, 140 N.H. at 643, 673 A.2d at 775.

■  By using the phrase "reasonably be expected," Home Insurance apparently requires that its insureds exercise professional judgment at several critical junctures. First, Home Insurance requires insureds to exercise their judgment before triggering the reporting requirement for potential claims. A similar ambiguity arises upon renewal, when Home Insurance requires its insureds to disclose "any incident, act or omission *which might reasonably be expected* to be the basis of a claim or suit arising out of the performance of professional services for others." (Emphasis added.) The ambiguity in determining whether potential claims must be reported when renewing the policy is identical to the ambiguity in determining when to report a potential claim during the policy period. Accordingly, we agree with the trial court's determination that the plaintiffs acted reasonably in concluding that reporting was not required in May 1991 since a claim was not "reasonably . . .

expected to be the basis of a claim or suit" until September 1992. If Home Insurance wishes to require reporting in every instance of an actual or a potential claim in order to guarantee coverage, it must use clear policy language to do so.

*Affirmed.*

All concurred.