Hillsborough-northern judicial district
No. 2002-322

IN THE MATTER OF FREDERICK J. FEDDERSEN AND SHELLEY CANNON

Argued: February 13, 2003
Opinion Issued: February 28, 2003

*Brennan, Caron, Lenehan & Iacopino*, of Manchester (*William E. Brennan* on the brief and orally), and *Elizabeth Cazden*, of Manchester, by brief, for the petitioner.

*Raimo & Murphy, P.C.*, of Manchester (*Patricia A. Murphy* on the brief and orally), and *Wiggin & Nourie, P.A.*, of Manchester (*Doreen F. Connor* on the brief), for the respondent.

NADEAU, J. The petitioner, Frederick Feddersen, appeals the recommendation of the Master (*Leonard S. Green*, Esq.) approved by the Superior Court (*Brennan*, J.) modifying his child support obligation following his receipt of an approximately $3.4 million settlement from a patent infringement lawsuit in 2001. The issue before the trial court was whether and how to include the settlement as "gross income" for child support purposes. *See* RSA 458-C:2, IV (Supp. 2002). On appeal, the petitioner concedes that the settlement was includable as income. He argues, however, that the trial court erred by: (1) using his 2001 tax returns to determine his present income instead of relying solely upon his March 2002 financial affidavit; (2) issuing a child support order based upon the 2001 settlement income for years other than 2001; (3) making the modified award retroactive to January 2001; and (4) requiring him to place money in a trust for the child as security for future child support payments. He also invites the court to overrule its decision in *In the Matter of Dolan and Dolan*, 147 N.H. 218 (2001). We affirm.

*I. Factual Background*

The petitioner and the respondent, Shelley Cannon, divorced in 1995. The respondent has custody of the couple's son, who turned sixteen in January 2003. The 1995 decree required the petitioner to pay $3,000 per month in child support.

The petitioner is the sole shareholder of FMT Corporation, a closely held corporation. Over the years, FMT Corporation brought three patent infringement suits. The instant appeal concerns the settlement of the third such suit in 2001, for which FMT Corporation received $5 million (less attorney's fees). After attorney's fees, the total value of the settlement was approximately $3.4 million. The petitioner has been using the proceeds of this settlement to fund a newly created start-up business in Tennessee and to pay taxes.

In May 1998, three years after the divorce decree was issued, the respondent petitioned to modify the support order. *See* RSA 458-C:7 (Supp. 2002). The court did not hear the petition until nearly four years later, in March 2002.

While the petition to modify was pending, the Master (*Peter J. Bourque*, Esq.) recommended and the Superior Court (*Conboy*, J.) approved an order temporarily modifying the petitioner's child support obligation. The temporary order, issued in December 2000, increased the petitioner's monthly child support obligation to $4,750. The order was made retroactive to June 1, 1999.

Following the March 2002 hearing, the master ruled that the $3.4 million settlement was includable as gross income for child support purposes. Pursuant to the uniform child support guidelines, the petitioner's total support obligation would have been $40,000 per month. The master, however, exercised his statutory discretion to reduce the petitioner's total support obligation, explaining that "[e]ven in California, $40,000 a month for child support might seem a bit over the top." Accordingly, he ordered the petitioner to pay $7,000 per month in child support until the child turned eighteen. Acknowledging that the $3.4 million settlement was "non-repetitive," the master ordered the petitioner to place $200,000 in a trust fund to provide the funds to pay $7,000 per month until the couple's child was eighteen. The master explained that placing the money in a trust was necessary "to protect the child from any future vagaries in the Petitioner's income."

## II. Discussion

Trial courts have broad discretion to review and modify child support awards. *See Nicolazzi v. Nicolazzi*, 131 N.H. 694, 696 (1989). They are in the best position to determine the parties' respective needs and their respective ability to meet them. *Id.* Accordingly, we will set aside a modification order "only if it clearly appears on the evidence" that the court's exercise of discretion was unsustainable. *Butterick v. Butterick*, 127 N.H. 731, 736 (1986) (quotation omitted); *cf. State v. Lambert*, 147 N.H. 295, 296 (2001) (explaining unsustainable exercise of discretion standard).

### A. Use of 2001 Income

The petitioner first argues that the trial court erroneously relied upon his income for 2001 as his "present income," rather than his income for March 2002, when the court heard the petition to modify. We disagree.

To calculate child support, the trial court must first determine each parent's "present income." *In the Matter of Crowe & Crowe*, 148 N.H. 218, 222 (2002). It is up to the trial court to decide "what income figures should be used . . . based upon the facts presented at the hearing." *Id.* In so doing, the court may consider "[t]he credibility and forthrightness of the noncustodial parent in disclosing income." *Id.* at 223 (quotation omitted).

In *Crowe*, we affirmed the trial court's use of past tax returns and other information to determine the obligor's present income. *Id.* The trial court found that the amount listed on the obligor's 1999 tax return did not reflect his current income and was thus unreliable. *Id.* In so finding, the court compared the obligor's tax returns for 1996 through 1999, looked at his business records, which showed that he had drawn personal expenses from the business, and considered income generated from his rental property. *Id.*

As in *Crowe*, the trial court found the petitioner's financial affidavit misleading. In his March 2002 financial affidavit, the petitioner listed his monthly income as $12,309. This amount did not include any of the proceeds from the patent infringement lawsuits. For instance, although the petitioner, through FMT Corporation, had received $857,000 in January 2002 as partial payment of a settlement of one lawsuit, he did not report this on the financial affidavit. Nor did he report the $3.4 million settlement FMT Corporation received in 2001, even though his wife was paid $3 million of this settlement as "salary."

■ As in *Crowe*, the court was not required to rely solely upon the petitioner's estimate of his present income. It was entitled to rely upon his 2001 tax returns as well as the other evidence presented of his present income. We hold that the trial court's exercise of discretion in this regard was sustainable.

■ The petitioner argues that because his 2001 income was "extraordinary," the court should not have used it as the basis for modifying his total support obligation. The relevant statutes require otherwise.

The legislature has determined that nonrecurring income is includable as "gross income" for child support purposes. *See Dolan*, 147 N.H. at 222; RSA 458-C:2, IV. RSA 458-C:2, IV defines "gross income" as

> all income from any source, whether earned or unearned, including, but not limited to, wages, salary, commissions, tips, annuities, social security benefits, trust income, lottery or gambling winnings, interest, dividends, investment income, net rental income, self-employment income, alimony, business profits, pensions, bonuses, and payments from [certain] government programs . . . .

This definition includes nonrecurring income, such as lottery or gambling winnings, as well as recurring income, such as wages and salary.

Pursuant to the legislative scheme, all items includable as "gross income" must be used to determine the parties' total support obligation.

*See* RSA 458-C:3 (Supp. 2002). To determine the parties' total support obligation, the court must multiply the parents' total net income (gross income less certain statutorily permitted deductions) by a percentage based upon the number of children. *See id.*

■ The statutory scheme provides courts with the means to address income fluctuations. *See Dolan*, 147 N.H. at 222. For instance, trial courts may adjust an award when applying the uniform child support guidelines would result in a "confiscatory support order." *See* RSA 458-C:5, I(j) (Supp. 2002); *Rattee v. Rattee*, 146 N.H. 44, 46-47 (2001).

Moreover, an obligor is not "without recourse when [his] income changes. Either party may seek an adjustment in child support by petitioning for a modification of support payments" based upon substantially changed circumstances. *Rattee*, 146 N.H. at 46 (quotation omitted). Parties have the statutory right to seek review of the award three years after its issuance or at any time based upon a substantial change of circumstances. *See* RSA 458-C:7; *Hillebrand v. Hillebrand*, 130 N.H. 520, 526 (1988).

### B. Dolan

The petitioner urges us to overrule our recent decision in *Dolan* on the ground that it prohibits courts from addressing nonrecurring income separately from an obligor's regular salary when calculating the parties' total support obligation. This prohibition stems from the statutory scheme, not from *Dolan*, and, thus, we decline to overrule *Dolan*.

In *Dolan*, 147 N.H. at 219-20, the obligee sought child support in 1999 based upon the obligor's 1998 reported wages, which included income from exercised stock options. The trial court ruled that the obligor's exercised stock options were includable as income for child support purposes. *Id.* at 220. Nonetheless, the trial court did not include the exercised stock options in the obligor's gross income when calculating the parties' support obligations. *Id.* The court calculated child support based solely upon the obligor's regular salary and required the obligor, in the future, to pay an additional amount whenever he exercised a stock option. *Id.* The court ordered that the child support guidelines percentage would apply to the exercised stock option to determine the child support payable to the obligee. *Id.*

We held that the trial court erred: "Having aptly concluded that exercised stock options are includable as income, the trial court should have added them to the petitioner's gross income when calculating the parties' total support obligation pursuant to RSA 458-C:2 & :3." *Id.* at 223. We reaffirm this ruling as the relevant statutes mandate it.

The petitioner also asks that we adopt a new rule to accommodate him and others like him with fluctuating incomes. Under this new rule, a trial court would use nonrecurring income to calculate a party's child support obligation only for the year in which the party received it and for no other years. The petitioner argues that this rule complies with the "spirit" if not the letter of *Dolan*.

In this case, he asserts, the trial court should have used his $3.4 million settlement to calculate his child support obligation for 2001 only and, presumably, used his March 2002 financial affidavit to calculate his child support obligation for other years. He asserts that his child support obligation for 2001, however, should be capped at $7,000.

We refuse the petitioner's request. This request presumes, incorrectly, that the trial court erred when it found the petitioner's March 2002 financial affidavit misleading. The evidence supported the trial court's finding in this regard. As previously discussed, we affirm the trial court's use of the petitioner's 2001 tax returns to determine his present income for child support purposes.

This is not the first case in which we have addressed how to accommodate an obligor's fluctuating income when calculating child support payments. In *Hillebrand*, 130 N.H. at 526, the obligor argued that the trial court should have taken a three-year average of his income to calculate his child support obligation. We rejected this argument, noting that the statutory scheme provided a means of addressing income fluctuations by permitting either party to petition for modification based upon changed circumstances. *Id.* We held that the relevant statutes did not permit income averaging to determine child support obligations, but rather required trial courts to determine child support based upon the parties' "present income." *Id.*

We affirmed this ruling in *Rattee*, 146 N.H. at 46. The obligee in *Rattee* argued that income averaging was required because the obligor's income fluctuated "constantly." *Id.* Once again, we held that income averaging was inappropriate. *Id.* We directed the trial court to base the obligor's child support obligation on his present income. *Id.* We noted that the obligee had recourse when the obligor's income changed because she could petition for modification. *Id.*

In this case, having properly determined that the petitioner's present income included the $3.4 million settlement, the trial court committed no error by calculating the petitioner's child support obligation based upon his present income. *See id.* Further, after applying the uniform child support guidelines percentage, the court exercised its statutory discretion to deviate from the guidelines to account for the petitioner's "[s]ignificantly high . . . income." RSA 458-C:5, I(b) (Supp. 2002).

Like the parties in *Hillebrand* and *Rattee*, the petitioner and respondent may move to modify the child support order should the petitioner's income change substantially. Contrary to the petitioner's assertions, we do not interpret the trial court's order as foreclosing a subsequent petition to modify based upon a substantial change of circumstances.

### C. *Duration of Child Support Order*

■ The petitioner asserts that the trial court erroneously required him to pay the modified support amount "for the balance of the child's minority or until he graduates from high school." We disagree. In this State, a child support order remains in effect until it is judicially modified, unless the court has provided for earlier cessation of payments, or unless the child support obligation terminates by operation of law. *See Griffin v. Avery*, 120 N.H. 783, 787 (1980) (decided under prior law); RSA 458:35-c (1992).

■ The petitioner next contends that the trial court impermissibly used his 2001 income to revise its temporary order retroactively. We find no such error. As the petitioner concedes, by statute, the trial court had the discretion to make its modified support order retroactive to May 1998, the date on which the petition to modify was filed. *See* RSA 458:17, VIII (Supp. 2002); *Maciejczyk v. Maciejczyk*, 134 N.H. 343, 345-46 (1991).

The petitioner asserts that he relied upon the temporary order to make financial plans in 2001 and 2002. He contends that, based upon the temporary order, "[h]e thought he knew what his combined obligations to his former wife and son were, and he arranged to draw sufficient funds out of his business to pay those." He then used other available funds to invest in new lines of business, and now finds the retroactivity of the modified child support order "highly disruptive and inappropriate." The petitioner's reliance upon the temporary order was misplaced as it expressly stated that it was "temporary in nature and subject to further review at the final hearing."

### D. *Trust Fund*

Finally, the petitioner takes issue with the court's order requiring him to place $200,000 in a trust fund as security to ensure payment of child support. He concedes that "[i]n appropriate cases" the trial court has the statutory authority to require security, such as a trust fund, for payment of future child support. *See* RSA 458:21 (1992). He contends, however, that security measures were not justified in this case. We disagree.

RSA 458:21 permits the trial court, in its discretion, to require security for payment of child support. To accomplish this, the court may require the obligor to place money in a trust and empower the trustee to make

support payments on his behalf. *See Dubois v. Dubois*, 121 N.H. 664, 667-68 (1981); *Leary v. Leary*, 137 N.H. 161, 165 (1993). The petitioner argues that the court may exercise its discretion in this regard only "where there is a history of or a substantial risk of nonpayment due to recalcitrance." RSA 458:21, however, contains no such limitation. It provides that the court may require security "[i]n *all* cases where alimony or an allowance shall be decreed for a spouse or children . . . ." RSA 458:21 (emphasis added).

The petitioner mistakenly relies upon our holding in *Dubois*. In *Dubois*, 121 N.H. at 668, we observed that "[o]ne reason for requiring a person to provide security is to force a recalcitrant person to honor his or her legal obligation to support his or her children." We did not hold that this was the only permissible reason to require security measures. In *Dubois*, we remanded to the trial court to determine whether the obligor's "conduct and the circumstances of th[e] case" warranted security arrangements pursuant to RSA 458:21 and left it to the court's discretion to determine what measures were appropriate. *Id.* at 669.

■ In this case, the trial court required the trust after finding the petitioner's financial affidavit "misleading" because it did not include the $3.4 million settlement, as well as other amounts from the patent infringement lawsuits, and that the petitioner did not pay child support on the income he actually received in 2001. Additionally, the trial court heard the petitioner testify that he believed the money from the patent infringement suits belonged to him alone and that he had used some of it to invest in new business ventures. In light of these findings, which the record supports, and this testimony, we cannot say that the trial court erred when it required the petitioner to place $200,000 in a trust fund to secure future child support payments.

*Affirmed.*

DALIANIS and DUGGAN, JJ., concurred.