Feddersen v. Garvey, et al.        CV-03-323-JD  01/24/05  P

UNITED STATES DISTRICT COURT FOR THE
                         DISTRICT OF NEW HAMPSHIRE


<u>Frederick Feddersen</u>

     v.                              Civil No. 03-323-JD
                                     Opinion No. 2005 DNH 009
<u>Carolyn S. Garvey and</u>
<u>Douglas, Leonard & Garvey, P.A.</u>


                         O R D E R


     Frederick Feddersen brings a legal malpractice claim against
Carolyn S. Garvey and the law firm of Douglas, Leonard & Garvey,
P.A., arising from their representation of him during his divorce
proceedings.  Garvey and the law firm move for summary judgment
on the ground that Feddersen's claims are barred by the statute
of limitations.  Feddersen objects.


                         <u>Background</u>

     Attorneys Charles Douglas and Carolyn Garvey and the firm
that preceded Douglas, Leonard & Garvey, P.A., represented
Frederick Feddersen in his divorce from Shelley (Cannon)
Feddersen between the fall of 1993 and July of 1995.  During that
time, Feddersen's company, FMT Corporation, was involved in
patent litigation with both Nissei Corporation and Constar
Corporation.  FMT received a judgment in the amount of $3.5
million in the Nissei case after years of litigation and great

expense to the company, but Nissei appealed the judgment. The Constar case remained pending, although developments in the case were favorable to Feddersen.

Feddersen and Cannon signed a property stipulation in December of 1994. They agreed that Cannon would waive her interest in any proceeds from the Constar case in exchange for a lump sum payment. Because Feddersen did not have enough money on hand to pay the agreed amount, the parties also agreed, as part of the divorce stipulation, that he would pay when Nissei paid FMT, making the divorce stipulation contingent on the payment of the Nissei judgment. The stipulation was filed in escrow with the court pending payment of the Nissei judgment. Counsel for Feddersen and Cannon were granted several extensions of time, delaying the final divorce hearing while they waited for the Nissei judgment to be paid, which would finalize the property stipulation. A later request for a stay was denied, however, and the court scheduled a contested hearing which, after continuances, was scheduled for July of 1995.

In April of 1995, the Constar case unexpectedly settled for $11 million, to be paid in installments. On May 31, 1995, FMT received the first installment payment of $5 million. The Nissei judgment still had not been paid, and it was not paid until several months later. Feddersen's attorney, Charles Douglas,

wrote to the court that the "contingency" in the parties' stipulation had occurred and asked that the case be scheduled immediately for an expedited uncontested final hearing. Feddersen's attorneys sent Cannon's attorney a check for the stipulated amount, without disclosing that the Constar case had settled and that the Constar settlement, rather than the Nissei judgment, was the source of the money paid to Cannon.

Feddersen's other attorney, Carolyn Garvey, prepared Feddersen's financial affidavit for the final hearing. The affidavit showed the value of FMT Corporation as of December 31, 1992, because Garvey thought the parties had agreed that valuation would be used. The affidavit represented that a full disclosure had been made of all of Feddersen's assets, although no disclosure was made of the Constar settlement. The parties' stipulation, which had been signed in December of 1994, was approved by the court, and the final divorce decree issued on July 14, 1995.

Three years later, Cannon, now represented by a new attorney, Patricia Murphy, petitioned for review of child support. Carolyn Garvey withdrew from representing Feddersen in May of 1998, and Attorney Steven Grill filed an appearance on his behalf. The trial on the child support petition and other issues was scheduled for March 23, 1999. As part of discovery produced

3

in that proceeding, Cannon's attorney learned just weeks before trial of the undisclosed Constar settlement, that the value of FMT Corporation stated in Feddersen's affidavit was the value in 1992 rather than 1995, and that Feddersen's income had been considerably greater than he had indicated in his affidavit.

Cannon's lawyer, Murphy, told Feddersen's lawyer, Grill, that these were significant issues. During trial, in a chambers conference, Murphy raised the issue of whether the circumstances of the parties' divorce stipulation violated the requirements of the New Hampshire Supreme Court's decision in Shafmaster v. Shafmaster, 138 N.H. 460 (1994), and indicated that she would file a motion to set aside the property settlement if the parties did not settle the child support issue. Because of the "Shafmaster" issue, the marital master, Peter Bourque, halted the trial to give the parties an opportunity to mediate.

After the trial was suspended, Grill told Feddersen that Murphy was considering filing pleadings to overturn the divorce property settlement because the Constar settlement had not been disclosed. Grill described the problem as a "Shafmaster" issue. Feddersen immediately called his former attorney, Carolyn Garvey, who told him that all disclosures required by law had been made and that Cannon had waived her interest in the Constar case. Garvey told him that a motion to set aside the property

4

settlement would not be successful. Grill was upset that Feddersen had called Garvey about the issue.

Grill sent Feddersen a letter dated March 26, 1999, that outlined his review of the divorce case, noting that the affidavit, filed in 1995, used Feddersen's 1993 income, the 1992 value of FMT, and failed to disclose the Constar settlement. He wrote, "You should also be aware that it was Chuck Douglas (or Carolyn Garvey of his office) who prepared the Financial Affidavit that you submitted to the Court in connection with the final hearing approving the Permanent Stipulation." Def. Ex. 5 at 0643. Grill stated that the affidavit filed was not a "current affidavit and therein lies the problem. The bottom line is that this is a complicated and potentially very dangerous issue for you." Id. at 0644. He strongly recommended that Feddersen settle the matter with Cannon. Grill also reiterated his concern about Feddersen having contacted Garvey on his own, and he warned Feddersen that "having been alerted to the potential problem with your June 1995 Financial Affidavit, Attorney Douglas may attempt to protect himself against any potential malpractice claim." Id. Grill filed a motion to withdraw as counsel in April of 1999, before Murphy filed the motion to set aside the property settlement.

Feddersen met with Attorneys Matthew Cairns and Garry Lane

5

of the Ransmeier & Spellman law firm on April 14, 1999.[1]
Feddersen described his understanding of the problem with the
property settlement to them. He said that his former wife was
challenging the property settlement on the ground that he had not
disclosed information about the Constar settlement and had used
the 1992 value of FMT in his 1995 financial affidavit. With
regard to the 1992 value, he explained that he did not know why
Garvey put that reference in the affidavit. He also said that
Grill had told him that those omissions were fraud and that he
tried to explain it was not fraud because when he signed the
stipulation the representations were true. Cairns did not raise
or discuss the possibility of a malpractice suit against Douglas,
Garvey, or their firm, while he represented Feddersen.

Murphy filed a motion to set aside the divorce decree and
permanent stipulation on May 14, 1999. Cairns, on behalf of
Feddersen, sent copies of the motion to Feddersen and Garvey.
Cairns's cover letter to Garvey explained that Feddersen had
suggested contacting her to confirm his recollection that the
Nissei and Constar settlements were both discussed in reaching
the stipulation in December of 1994. Cairns also wrote that
Cannon's divorce attorney, Ronna Wise, had told Cannon's present

---

[1]The meeting was recorded, at Feddersen's request, and was
later transcribed.

6

attorney, Patricia Murphy, that she, Wise, had no idea of the magnitude of the value of the patent settlements at the time of the divorce. Cairns filed an objection to the motion but also submitted an offer to Murphy proposing to settle all of the pending issues between Cannon and Feddersen by assigning twenty percent of any settlement amount or judgment FMT received in its then pending patent litigation with another company, Aoki, less attorneys' fees and costs. Cairns and Feddersen believed the offer was worth in the range of two million dollars. The offer was eventually rejected. Cairns withdrew from the case in December of 1999.

Feddersen then retained Attorney William Brennan to represent him. The motion to set aside the divorce decree and permanent stipulation was litigated separately from the child support issues that had begun the proceedings in 1998. A hearing was held on the motion to set aside in June of 2001. Garvey testified at the hearing that she had no obligation under Superior Court Rule 158 or Shafmaster to disclose the Constar settlement. Douglas's deposition testimony was also used at the hearing. The marital master issued his decision on September 5, 2001, finding that Cannon had been entitled to know about the Constar settlement before the final divorce decree issued. The master granted Cannon's motion and set aside the property

7

division aspects of the final divorce stipulation. On March 19, 2003, the New Hampshire Supreme Court affirmed the decision of the marital master.

The child support issues proceeded separately. The marital master recommended a temporary modification of child support which was approved in December of 2000. See In the Matter of Feddersen, 149 N.H. 194, 196 (2003). A hearing was held on those issues in March of 2002, following which the master issued a final modification of the child support order. Id. The supreme court affirmed the modification in February of 2003. Id. at 201.

Feddersen states in an affidavit that he learned in February of 2002 that Cannon had filed a malpractice suit against Wise who represented her during the divorce. He also states that he called Douglas who told him that his firm had done nothing wrong. Feddersen alleges in his complaint that after receiving the decision from the New Hampshire Supreme Court in February of 2003, he paid Cannon $1.3 million to settle all of the issues between them. Feddersen contacted Attorney Steven M. Latici, and on July 29, 2003, Latici filed suit on Feddersen's behalf against Garvey and the law firm. Garvey notified her insurance carrier of the lawsuit on August 13, 2003.

8

## Standard of Review

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The party seeking summary judgment must first demonstrate the absence of a genuine issue of material fact in the record. See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). A party opposing a properly supported motion for summary judgment must present competent evidence of record that shows a genuine issue for trial. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986). All reasonable inferences and all credibility issues are resolved in favor of the nonmoving party. See id. at 255.

## Discussion

Feddersen alleges that Attorney Garvey and the law firm, Douglas, Leonard & Garvey, P.C., were negligent in their representation of him in his divorce proceeding. As a result, he contends, he has incurred substantial legal fees in defending Cannon's motion to set aside their property settlement and has had to pay Cannon an extra $1.3 million as part of the modified property settlement. The defendants seek summary judgment on the

9

ground that Feddersen's claims against them are time barred.

Under New Hampshire law, which applies in this diversity case, a legal malpractice claim must be brought within three years of the date of "the act or omission complained of, except that when the injury and its causal relationship to the act or omission were not discovered and could not reasonably have been discovered at the time of the act or omission . . . ." N.H. Rev. Stat. Ann. ("RSA") § 508:4; Draper v. Brennan, 142 N.H. 780, 783 (1998). If the basis for the claim was not and could not reasonably have been discovered at the time of the defendants' act or omission, then "the action shall be commenced within 3 years of the time the plaintiff discovers, or in the exercise of reasonable diligence should have discovered, the injury and its causal relationship to the act or omission complained of." RSA 508:4; see also Furbush v. McKittrick, 149 N.H. 426, 430 (2003). The plaintiff bears the burden of showing that the discovery rule or another exception to the statute of limitations applies to his case. Id.

"To establish legal malpractice, a plaintiff must prove: (1) that an attorney-client relationship existed, which placed a duty upon the attorney to exercise reasonable professional care, skill and knowledge in providing legal services to that client; (2) a breach of that duty; and (3) resultant harm legally caused

10

by that breach." Carbone v. Tierney, 2004 WL 2827247, at *4 (N.H. Dec. 10, 2004). In this case, if Attorney Garvey and her firm were negligent in their representation of Feddersen as Feddersen alleges, it appears to be undisputed that their malpractice occurred between December of 1994 and July of 1995. Because Feddersen did not file suit against them until July of 2003, his claims are time barred unless, as he contends, the discovery rule applies.

Feddersen does not address the harm element of the discovery rule. Harm, for purposes of the discovery rule, occurs when the plaintiff incurs legal fees to address problems created by the defendant's alleged negligence. See Pichowicz v. Watson Ins. Agency, Inc., 146 N.H. 166, 167 (2001); see also Rosen Constr. Ventures v. Mintz, Levin, Cohn, Ferris, Glovsky & Popeo, P.C., 364 F.3d 399, 405 (1st Cir. 2004). Therefore, Feddersen was harmed when he began paying legal fees to address the "Shafmaster" issue which he began to do, at the latest, when his attorneys responded to Cannon's motion to set aside the divorce decree and permanent stipulation, filed in May of 1999.

With respect to the knowledge element of the rule, Feddersen contends that he did not know and could not reasonably have known of his former attorneys' possible malpractice until he received the marital master's decision in September of 2001, setting aside

the property settlement portion of the divorce decree. Garvey and the law firm argue that Feddersen knew of their alleged negligence long before that decision issued because Attorney Grill had warned Feddersen of the problem, that the problem was caused by his former attorneys, and of the possibility of malpractice, and, after those warnings, Murphy filed the motion to set aside the divorce and permanent stipulation, as Grill had predicted.

In support of his position that a reasonable person would not have known of the defendants' possible malpractice until he received the marital master's decision, Feddersen points to the New Hampshire Supreme Court's decision in Shaheen, Cappiello, Stein, & Gordon v. Home Ins. Co., 143 N.H. 35, 41-42 (1998), holding that the firm provided timely notice to its insurer of a potential malpractice claim after receiving the court's decision against its client. There, however, the question was not when a reasonable person would know that he had been injured by his attorney's malpractice, for purposes of the discovery rule, but when the policy required an attorney to report a potential claim for purposes of insurance coverage. Id. at 39. The court found that the policy terms required insureds to use their professional judgment as to when a claim against them was reasonably expected and that, in the circumstances of the case, the firm properly

12

reported the possibility of a claim after receiving the court's decision against the firm's client.  Id. at 41-42.

Because the decision in Shaheen involved the interpretation of an insurance policy for purposes of determining coverage, the analysis is not consonant with the discovery rule.  The question in Shaheen was when the firm, in its professional judgment, would reasonably have expected a claim to be brought against it.  In contrast, for the purposes of the discovery rule, the question is when the plaintiff knew or reasonably should have known that he was injured because of his former lawyers' actions.  Therefore, Shaheen does not establish a rule, as Feddersen urges, that a reasonable client would not know he had been injured by his attorney's misfeasance until a court decision informed him of the problem.

Feddersen argues that in Draper, 142 N.H. at 786-87, the New Hampshire Supreme Court adopted a rule that the date of an adverse decision triggers the statute of limitations for a legal malpractice case.  Feddersen is mistaken.  In Draper, the court noted that the client could have been on notice of his attorney's negligence sooner, but that he was certainly notified by the trial court's decision against him, which was issued more than three years before his malpractice suit began.  Id. at 786. Draper argued that the limitations period should be tolled until

13

the appellate process was complete, but the court declined to so rule. Id. at 787. Therefore, the court did not establish a triggering rule in Draper, but instead applied the usual discovery rule principles, affirming the lower court's decision that the claims affected by the discovery rule were nevertheless untimely.

Feddersen also relies on the analysis in Rosen Constr. Ventures, 364 F.3d at 402-14. In that case, Rosen hired the law firm, Mintz, Levin, in April of 1995 to draft a contract to memorialize its agreement with a company, O'Donnell Sand and Gravel, for fill to be used at a construction site in Everett, Massachusetts, and for certain interests in a piece of property O'Donnell owned that was close to Rosen's site. Id. at 402. Almost a year after the contract was signed, O'Donnell claimed that it had extinguished Rosen's opportunity for any permanent interest in O'Donnell's neighboring property. Id. at 403. Rosen disagreed with that interpretation of the agreement. Id.

A new law firm brought suit on Rosen's behalf in Massachusetts state court in November of 1996. In April of 1998, the court granted O'Donnell's motion for summary judgment, and the judgment was affirmed two months later. Id. Rosen then claimed that Mintz, Levin had been negligent in drafting the contract and in advising it on obtaining an easement from

14

O'Donnell.  Id.  The parties agreed that if the malpractice claim accrued before September of 1996 it was time barred, but if it accrued afterward it was timely.  Id. at 404.

The First Circuit framed the standard under Massachusetts law as:  "the limitation period begins to run once a client or former client knows or reasonably should know that he or she had sustained appreciable harm as a result of the lawyer's conduct." Id. at 405 (internal quotation marks omitted).  The court found that Rosen was harmed when it began to pay legal fees to challenge O'Donnell's position on the contract, leaving only the question of when it knew or reasonably should have known of the cause of the harm.  Id.  Relying on the doctrine of continuing relationship, under Massachusetts law, the First Circuit concluded that because Mintz, Levin continued to assure Rosen that its position was correct and Rosen did not acquire actual knowledge of the cause of the harm from another source, it did not know the cause of its harm until the state court issued its decision.  Id. at 407-14.

Even if this court were to apply the doctrine of continuing representation, which the New Hampshire Supreme Court has not yet adopted, the doctrine tolls the limitation period only while the defendant attorney continues to represent the plaintiff client or remains actively involved in his case.  Id. at 406.  Garvey and

15

her law firm did not represent Feddersen after July of 1995. To the contrary, in 1998 and 1999, Feddersen was represented by Grill who made it clear that Feddersen should not have contacted Garvey or her firm while being represented by him and his firm. Grill also made it clear to Feddersen that his interests were in conflict with those of his former attorneys. After that, Feddersen was represented by the Ransmeier & Spellman firm, and then Brennan, before he contacted Latici about the malpractice case.

More importantly, however, the record in this case demonstrates that Feddersen knew or should have known that Garvey's preparation of the financial affidavit and representations about the permanent stipulation had caused him harm because he was paying additional attorneys' fees to address those issues after the marital master suspended the trial in March of 1999. Grill told Feddersen on several occasions that he had a serious problem because of the Shafmaster issue arising from the affidavit prepared by Garvey and her firm. Feddersen demonstrated his understanding of the problem in his explanation of his case to Attorneys Cairns and Lane in April of 1999. Their efforts to settle the case, offering a significant amount of money, reinforced Feddersen's understanding of the seriousness of the problem.

16

Under these circumstances, it is undisputed that Feddersen knew by the spring or summer of 1999 that he had been harmed by the alleged negligence of Garvey and Douglas, Leonard, and Garvey, P.A.  Since he did not bring his malpractice action against them until July of 2003, at least four years later, his claim is barred by the statute of limitations.  The defendants are entitled to summary judgment on both claims in the complaint.

## Conclusion

For the foregoing reasons, the defendants' motion for summary judgment (document no. 29) is granted on both of the plaintiff's claims.

The clerk of court shall enter judgment accordingly and close the case.

SO ORDERED.

_____
Joseph A. DiClerico, Jr.
United States District Judge

January 24, 2005

cc:  Peter F. Kearns, Esquire
     Benjamin T. King, Esquire
     Steven M. Latici, Esquire

17